**SULLIVAN v. UNITED STATES.**

Civ. A. No. 52-1101.

United States District Court
D. Massachusetts.

July 20, 1953.

Arthur P. Sullivan, Boston, Mass., Frederick W. Mansfield, Boston, Mass., for plaintiff.

George F. Garrity, U. S. Atty., and Philip T. Jones, Asst. U. S. Atty., Boston, Mass., for defendant.

FORD, District Judge.

Plaintiff brings this action to recover estate taxes alleged to have been erroneously and illegally assessed and collected from him as executor under the will of Josephine E. Cotter.

The will of Mrs. Cotter, who died July 4, 1944, contained under clause 28 legacies of shares in the residue of her estate to certain of her relatives in Germany. These included a one-third share amounting to $52,500 to August Jaeger and Fransiska Dehm, and shares to Caroline Hess and Josephine Stohr which amounted to $5,000 each. Clause 29 of the will provided:

"If after the expiration of one year from the date of the Probate of this my last will and testament, my Executor, hereinafter named, is unable to distribute any of the legacies under clause (28) of this will, either by reason of the prior decease of any of said legatees, or by reason of the inability of my said Executor to locate any of the legatees named in said clause (28) after diligent search for such legatees has been made by my said Executor, or if for any reason beyond the control of my said Executor, he is unable to make distribution of said legacies set forth in clause (28) then in that event, I direct the shares of the deceased legatees and the shares of those legatees whom my Executor is unable to locate or, if for any reason beyond the control of my said Executor, my said Executor cannot make said distribution as set forth in clause (28), then I give said legacies which my said Executor is unable to distribute to the German Holy Trinity Catholic Church, Shawmut Avenue, Boston, Massachusetts."

Josephine Stohr died in Germany on May 16, 1944, after Mrs. Cotter had executed her will on January 13, 1944 but before Mrs. Cotter herself died. The other three legatees had already died in Germany before the execution of the will—August Jaeger on October 21, 1929, Fransiska Dehm on August 1, 1939, and Caroline Hess on July 27, 1941. They thus could not have been located by the executor within the one year period designated in clause 29. In fact, plaintiff did not learn of the deaths of Hess and Stohr until on or about January 1, 1948, or of the deaths of Jaeger and Dehm until on or about April 15, 1950. The Suffolk Probate Court on August 21, 1951 ordered that the legacies to these four persons be paid to the church designated in clause 29.

On November 20, 1945, the Alien Property Custodian issued Vesting Order No. 5350, vesting all right, title, interest and *claim* of any kind or character whatsoever of Josephine Stohr, Caroline Hess, August Jaeger, Fransiska Dehm and two others not here involved, in and to the estate of Josephine E. Cotter. This order was filed in the Suffolk Probate Court and the United States Attorney represented the Alien Property Custodian in the proceedings there. This vesting order has never been withdrawn. However, on June 9, 1952, a waiver was filed of the claim of appeal (filed September 5, 1951) from the Probate Court decree of August 21, 1951 (the decree ordering payment of the legacies to the church) on behalf of the Attorney General as successor to the Alien Property Custodian.

Plaintiff's deduction of $62,500, the total amount of these four legacies, from the gross estate was disallowed, and a resulting estate tax deficiency was assessed of which the amount of $17,515.30 was attributable to the inclusion of the $62,500 in the estate. This amount, with interest thereon of $618.80, was paid by plaintiff to the Collector of Internal Revenue on May 6, 1946. It is this total payment of $18,134.10 which plaintiff seeks to recover in this action. On February 8, 1951 plaintiff filed a claim for refund of this amount which was disallowed on June 20, 1952.

The United States moves to dismiss on the ground that the claim for refund was not made within three years after payment of the tax, in compliance with the requirements of 26 U.S.C.A. § 910, providing:

"All claims for the refunding of the tax imposed by this subchapter alleged to have been erroneously or illegally assessed or collected must be presented to the Commissioner within three years next after the payment of such tax. The amount of the refund shall not exceed the portion of the tax paid during the three years immediately preceding the filing of the claim, or if no

752

claim was filed, then during the three years immediately preceding the allowance of the refund."

and § 3772 (a) (1) providing:

"(a) *Limitations*

"(1) *Claim.* No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."

 "Claims for tax refunds must conform strictly to the requirements of Congress. A claim for refund of an estate tax 'alleged to have been erroneously or illegally assessed or collected must be presented to the Commissioner within three years next after the payment of such tax.' On the face of it, this requirement is couched in ordinary English, and, since no extraneous relevant aids to construction have been called to our attention, Congress has evidently meant what these words ordinarily convey." Rosenman v. United States, 323 U.S. 658, 661, 65 S.Ct. 536, 537, 89 L. Ed. 535. The filing of a timely claim for refund is a statutory prerequisite for recovery in an action such as this. Edwards v. Malley, 1 Cir., 109 F.2d 640, 645. The statutory provisions are substantive jurisdictional requirements, and must be strictly complied with as limitations imposed by Congress upon the consent of the United States to be sued. United States v. Chicago Golf Club, 7 Cir., 84 F.2d 914, 916, 106 A.L.R. 209.

Plaintiff, however, contends that his claim for refund must be considered timely in view of the provisions of § 36 of the Trading with the Enemy Act, 50 U.S.C.A. Appendix, § 36, which deals with the tax consequences of the vesting of property in the Alien Property Custodian, and provides in part: "(c) * * * Statutes of limitations on assessment, collection, refund, or credit of Federal taxes shall be suspended, with respect to any vested property or interest, or the earnings, increment or proceeds thereof, while vested and for six months thereafter; but no interest shall be paid upon any refund with respect to any period during which the statute of limitations is so suspended." Subsection (d) includes estate taxes among those covered by subsection (c).

It is true that since the four German legatees involved here were all dead before the testatrix, none of them actually took anything under her will, and that when the facts became fully known and the proper distribution of the estate had been determined by the probate court, the interests with which the Alien Property Custodian purported to be vested proved to be of no value. However, it cannot be held that the Alien Property Custodian took absolutely nothing by his vesting order. The order purported to vest all "right, title, interest and claim of any kind or character" of these four legatees in and to Mrs. Cotter's estate. At the time of the vesting order there was at least a claim against the estate which could be asserted by the Alien Property Custodian in good faith for the supposed interest of these named legatees. By the vesting order the right to assert that claim passed to the Alien Property Custodian. It is true that the claim was eventually rejected by the court. That is the fate of many claims submitted to litigation.

 It was the existence of these legacies that caused the disallowance by the United States of plaintiff's deduction of the amount of the legacies. The tax which plaintiff seeks to recover in this action is one paid because these legacies which were claimed by the Alien Property Custodian and which were vested in the latter by Vesting Order No. 5350 were included in decedent's estate. The tax is, therefore, one with respect to an interest vested in the Alien Property Custodian, to which the suspension of limitations provided for in § 36(c) is applicable.

■ The government raises the question of whether 26 U.S.C.A. §§ 910 and 3772 (a) (2) are statutes of limitation. Whether regarded as statutes of limitation or jurisdictional requirements, the result here is the same. Their purpose is clearly to define the time within which certain preliminary action must be taken and thereafter the time within which an action must be commenced to recover a claimed tax refund. The heading of § 910 is "Period of limitation for filing claims" and § 3772 (a) is headed "Limitations". Government cites the statement in United States v. Chicago Golf Club, supra, 84 F.2d at page 917, that "The time within which the claim must be filed and the time within which suit must be begun after the disallowance thereof are not statutes of limitations as generally understood, * * *." It is clear from the opinion that what the court was there pointing out was that, unlike the ordinary statute of limitations, they imposed jurisdictional requirements and hence need not be specially pleaded and could not be waived. The fact that statutes of limitation with respect to tax refunds are in some respects different from the usual statute of limitations and are regarded as jurisdictional requirements (conditions under which the United States consents to be sued), affords no ground for holding that they do not come within the scope of 50 U.S.C.A., Appendix, § 36 (c), when Congress specifically made the suspension provisions applicable to "Statutes of limitations on the * * * refund * * * of Federal taxes", thereby extending the time during which the United States consented to be sued.

■ The requirements of 26 U.S.C.A. §§ 910 and 3772 (a) must be held to have been suspended during the time from the issuance of Vesting Order No. 5350 until the claim asserted thereunder was finally relinquished by the waiver of the claim of appeal in the state court proceedings on June 9, 1952. Plaintiff's application was, therefore, timely and jurisdictional requirements were supplied.

On the merits, plaintiff's claim for refund is based on the contention that the deduction of $62,500 from the gross estate was one which he was entitled to make under the provisions of 26 U.S.C.A. § 812 (d) and was, therefore, improperly disallowed. The argument against the allowance is that the bequest to the church under clause 29 of decedent's will does not qualify as a charitable bequest under § 812 (d) since it was conditional and not definitely ascertainable at the time of the death of the testatrix. Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L. Ed. 647; Helvering v. Union Trust Co., 4 Cir., 125 F.2d 401; Gammons v. Hassett, 1 Cir., 121 F.2d 229.

The rule as to conditional bequests is stated in the applicable estate tax regulations, 26 C.F.R. § 81.46, as follows: *"Conditional bequests.* (a) If as of the date of decedent's death the transfer to charity is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that charity will not take is so remote as to be negligible."

■ In the present case there is no difficulty in ascertaining the amount involved. Clause 28 of the will provides for gifts of definite shares of the residue of the estate as it existed at the death of the testatrix, not subject to change by later events. In clause 29 these legacies are given under certain conditions to the church instead of to the legatees named in clause 28. In fact all of the four legatees involved here were dead before the testatrix. The event upon which the gifts to the church of their shares of the residue was to be effective had taken place. Upon her death the legacies passed immediately to the church. There was no further event required to make them effective, no possibility, even remote, that the church would not take. It is true that these facts were not known to the executor until a later date. It is, however, the operative facts as they existed at the death of the testatrix that are decisive, not the question of whether on that date it was known whether or not the facts existed. It is uncertainty and speculation as to what will happen after the date of death that may make the gift to charity non-deductible,

754

not the fact that the events which have already occurred before that date may not then be definitely known.

 The gift to the church, under the facts as they actually existed at the time of Mrs. Cotter's death, was definite and absolute. The deduction claimed by the executor should have been allowed. Plaintiff is entitled to recover the tax overpayment made as a result of the disallowance. Interest on the overpayment thus recovered is not to be allowed for the period prior to June 9, 1952. 50 U.S.C.A.Appendix, § 36 (c).

Defendant's motion to dismiss is denied. Judgment for plaintiff.