Herbert A. HILL and Alfred E. Hill, Executors of the Estate of Alfred W. Hill, Deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 572–56.

United States District Court
D. New Jersey.

Aug. 21, 1958.

Samuel Kalikman, Camden, N. J., for plaintiffs.

Chester A. Weidenburner, U. S. Atty., Newark, N. J., Robert T. Woodruff, Asst. U. S. Atty., Camden, N. J., Charles K. Rice, Asst. Atty. Gen., James P. Garland, Leo M. McCormack, Attys., Dept. of Justice, Washington, D. C., for defendant.

MADDEN, District Judge.

This action was instituted by plaintiffs, Herbert A. Hill and Alfred E. Hill, in their respective capacities as executors of the estate of Alfred W. Hill, deceased, against the defendant, United States of America, to recover estate taxes in the sum of $11,218.73 which allegedly were erroneously and illegally assessed and collected by said defendant from the plaintiffs. Jurisdiction is conferred upon the Court by 28 U.S.C. § 1346(a) (1).

The matter is presently before this Court on cross-motions for summary judgment. There are no controverted issues of material fact. The essential facts have been agreed upon by the parties and are contained in an amended stipulation of facts filed herein. The sole question presented for determination is whether or not under the stipulated facts, hereinafter set forth, the plaintiffs are precluded from maintaining this action under the three year limitation prescribed by Section 910 of the Internal Revenue Code of 1939 (26 U.S.C. § 910).

On January 13, 1950, the plaintiffs, executors of the estate of Alfred W. Hill who died October 6, 1948, filed a federal estate tax return which was due January 6, 1950, on behalf of the decedent's estate, which return indicated an estate tax liability in the amount of $12,532.89. Enclosed therewith was a remittance by check in that exact amount. Said check was processed by the Collector's office in the regular course of business. The remittance was credited to the taxpayer's account on January 13, 1950, and was not placed in the Collector's suspense account. A form receipt dated Jan. 13, 1950 and bearing the Collector's stamp marked, "Paid, Jan. 18, 1950" was issued. On January 19, 1950, the plaintiffs made a remittance of $14.42 representing interest due on the tax of $12,532.89 from January 6, 1950 to January 13, 1950. A form receipt dated Jan. 19, 1950 and bearing the Collector's stamp marked, "Paid, Jan. 20, 1950" was issued therefor. On February 14, 1950, the Commissioner of Internal Revenue signed the Assessment Certificate which assessed the tax and interest due from the estate in the amount of $12,547.31. To the Certificate is annexed the Assessment List which includes an itemization of the remittances made by the plaintiffs.

Subsequently, having been advised of a proposed deficiency of $7,461.55 found by the estate tax examiner who audited the return, the plaintiffs, on November 6, 1950, filed a waiver consenting to the assessment and collection of said deficiency. A remittance of $7,000 was made in part payment of the proposed deficiency on October 30, 1950, for which a form receipt dated Oct. 30, 1950 and bearing the Collector's stamp marked, "Paid, Jan. 23, 1951" was issued. Thereafter, in accordance with a government letter notifying the plaintiffs of the balance due on said deficiency and interest thereon, a further remittance of $829.55 was made by the plaintiffs on January 15, 1951, for which a form re-

ceipt dated January 15, 1951 and bearing the Collector's stamp marked, "Paid, Jan. 17, 1951" was issued. On January 19, 1951, the Commissioner of Internal Revenue signed the Assessment Certificate assessing the deficiency tax and interest due from the estate in the amount of $7,829.55. To this Certificate is annexed the Assessment List wherein the remittances made by the plaintiffs in payment of said deficiency and interest are itemized.

By letter dated April 26, 1951, the defendant gave notice to the plaintiffs that the gross estate tax was $20,606.26 but that upon appropriate evidence a credit of $611.82 for state inheritance taxes would be allowed. After having supplied such evidence the plaintiffs were notified by letter dated June 1, 1951, that the credit was allowed, that the final determination of estate tax due was $19,994.44, and that if said amount was already paid, together with accrued interest, no further action on their part would be required.

Sometime thereafter it was discovered by the plaintiffs that a debt of $85,835.25 owing by the decedent to the Woodbury Amusement Company was erroneously omitted by them from Schedule "K" of the Federal Estate Tax Return filed, and was not taken into consideration in the computation of the estate tax by either the plaintiffs or the defendant. Therefore, on the basis of said omission the plaintiffs, on January 5, 1954, filed with the Director of Internal Revenue a claim for refund in the amount of $19,291.90, together with interest. Confirmation of the omission having been made by the defendant, an estate tax examiner re-computed the tax on the estate and found it to be $1,315.16 and not $19,994.44 as previously assessed (an over-assessment of $18,680.28).[1]

The Director of Internal Revenue denied the claim in part, allowing only a refund of $9,994.75 consisting of the payment of $7,829.55 ($7,461.55 plus interest of $368.00), made in behalf of the deficiency, and $2,165.20 interest thereon. This constituted a rejection of the claim for refund to the extent of $11,218.73 (over-assessment of $18,680.28 less the refund of $7,461.55 of over-assessment); see footnote (1).

It is the contention of the defendant that while the plaintiffs' claim for refund, filed on January 5, 1954, was timely asserted as to the tax assessed as a deficiency it was not timely asserted as to the $12,532.89 tax first paid and assessed. The defendant argues that the three year limitation on the assertion of claims for refund commences to run from the date when the tax is paid, hence from January 13, 1950, the date on which the plaintiffs made their remittance by the check of $12,532.89, or from February 14, 1950, the date when the tax was formally assessed by the Commissioner. The plaintiffs, on the other hand, argue that the three year limitation commences to run from the date the Commissioner assesses the tax and not from the date the tax is paid, and hence, from January 19, 1951, the date of the formal assessment by the Commissioner of the deficiency tax. The plaintiffs would not consider February 14, 1950 the commencement date since they claim that notice of a formal assessment must be given to the taxpayer within a reasonable time before the limitation commences to run and no notice was given them until April 26, 1951, and June 1, 1951, and that the earliest date to which it can reasonably relate is January 19, 1951.

Section 910 of the Internal Revenue Code of 1939, supra, provides:

"All claims for the refunding of the tax imposed by this subchapter alleged to have been erroneously or illegally assessed or collected must be presented to the Commissioner *within three years next after the payment of such tax*. The amount of the refund shall not exceed the

---

1. These are the amounts set forth in the Stipulation, but the Court calculates the over-assessment to be $18,679.28.

portion of the tax paid during the three years immediately preceding the filing of the claim, or if no claim was filed, then during the three years immediately preceding the allowance of the refund. 53 Stat. 138." (Emphasis supplied.)

■ The statute is clear; it requires the assertion of claims for refund within three years next after the payment of the tax alleged to have been erroneously or illegally assessed or collected. It is the date of the payment of the tax from which the period of limitation commences to run and not the date of the assessment of said tax.

The Code does not define "payment" as employed in the context of the above quoted section nor does it determine what acts constitute "payment" thereunder. However, from an examination of the cases in which the courts have had occasion to pass upon the question of what constitutes "payment" it is apparent that the question was determined in each case upon its own particular facts.

In Rosenman v. United States, 1945, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535, the Court reviewed the facts before it and determined the matter according to what the parties had arranged and intended by such arrangements; thus on page 662 of 323 U.S., on page 538 of 65 S.Ct.:

"* * * There was merely an interim arrangement to cover whatever contingencies the future might define. The tax obligation did not become defined until April '1938. And this is the practical construction which the Government has placed upon such arrangements. The Government does not consider such advances of estimated taxes as tax payments. They are, as it were, payments in escrow. They are set aside, as we have noted, in special suspense accounts established for depositing money received when no assessment is then outstanding against the taxpayer. The receipt by the Government of moneys under such an arrangement carries no more significance than would the giving of a surety bond. Money in these accounts is held not as taxes duly collected are held but as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due."

It was the holding therein that (323 U.S. at page 661, 65 S.Ct. at page 538):

"* * * In any responsible sense payment was then made by the application of the balance credited to the petitioners in the suspense account and by the additional payment of $10,497.34 on April 22, 1938."

In Budd Company v. United States, 3 Cir., 1957, 252 F.2d 456, at page 459, the Court set forth the facts under which the question arose and stated:

"The legal question involved *from these facts* is whether the two checks of $400,000 each were 'payments' under the statute so that claim for refund had to be made within three years of the date of sending the checks to the collector. We think it clear from two decisions that the sending of money *under these circumstances* was not such a payment as to start the running of the statute against the taxpayer." (Emphasis supplied.)

The statute referred to in the above quoted passage is Section 322(b) (2) (A) of the 1939 Code (a similar statute of limitations on claims for refund of income tax).

And, finally, in Lewyt Corp. v. Commissioner of Internal Revenue, 2 Cir., 1954, 215 F.2d 518, at page 522,[2] before reviewing the facts therein, the Court stated:

"A remittance made in respect of an asserted or putative tax liability in no proper sense constitutes a tax 'payment' except to the extent that

2. Reversed on other grounds, 1955, 349 U.S. 237, 75 S.Ct. 736, 99 L.Ed. 1029.

it is effective to discharge such liability in whole or in part. *That in turn depends upon the agreement of the taxpayer and the Commissioner or his representatives, acting within their powers, or upon whether the taxing authorities have a duty under the particular circumstances involved to accept the remittance as a payment of the tax in full or pro tanto.*" (Emphasis supplied.)

See, also, Busser v. United States, 3 Cir., 1942, 130 F.2d 537, and Atlantic Mutual Insurance Company v. McMahon, D.C.S.D.N.Y.1957, 153 F.Supp. 48.

None of the cases quoted or cited are dispositive of the instant case but do serve as a polestar to guide the Court in its determination. For what the defendant urges is that the remittance of the $12,532.89 check be deemed "payment" of the tax made in advance of assessment. As to this proposition, the Court in Lewyt Corp. v. Commissioner of Internal Revenue, supra, states (215 F.2d at pages 522, 523):

" * * * While we do not read Rosenman to foreclose treating as a tax payment any remittance made prior to assessment, we do think that it supports the view that a remittance which does not satisfy an asserted tax liability should not be treated as the 'payment' of a tax. Satisfaction may, as in Rosenman, follow from payment of a tax assessed, for such a payment extinguishes the asserted liability, even though the taxpayer is left with an independent claim for refund which survives the discharge of the assessment. *Or it may follow from the payment of an asserted liability in advance of assessment, as appears to be contemplated by § 56(d), I.R.C., 26 U.S.C.A. § 56(d), and 26 C.F.R. 601.13(b) (2), if, as is expressly provided in the latter and by necessary implication in the former, the payment is accompanied by the taxpayer's acquiescence in the proposed deficiency.*" (Emphasis supplied.)

■■ Remittance is not per se "payment" of tax; this can be readily observed in the Rosenman, Budd Company, Lewyt Corp. and Atlantic Mutual Insurance Company cases, supra. Also, "a remittance which does not satisfy an asserted tax liability should not be treated as the 'payment' of a tax." Lewyt Corp. v. Commissioner of Internal Revenue, supra. An essential factor in "payment" before assessment is the satisfaction or discharge of what the taxpayer deems a liability. It is in this respect that the instant case differs from those wherein remittances were made in behalf of an asserted or putative tax liability and placed in a suspense account pending the disposition of contested liability as in the Rosenman and Budd Company cases.

See Rose v. United States, 3 Cir., 256 F.2d 223, 226, a recent opinion of the Circuit Court of Appeals for this Circuit, filed on June 16, 1958, wherein the Court stated:

"*Here, we think it clear on the record that the taxpayer did not discharge, by the remittance in 1950, what she deemed to be a liability, nor pay one that was asserted.* The remittance was expressly restricted as a deposit in the Collector's suspense account, and was employed as a means of saving interest or penalties under the system recognized by the Commissioner."

And later held:

" * * * The remittance did not become a payment until the contest between the parties was settled and the deficiency agreed upon."

See, also, Rosenman v. United States, supra, where, 323 U.S. on page 662, 65 S.Ct. on page 538, the Court stated:

"But the Government contends 'payment of such tax' was made on December 24, 1934, when petitioners transferred to the Collector a check for $120,000. This stopped the running of penalties and interest, says the Government, and there-

fore is to be treated as a payment by the parties. *But on December 24, 1934, the taxpayer did not discharge what he deemed a liability nor pay one that was asserted.* There was merely an interim arrangement to cover whatever contingencies the future might define." (Emphasis supplied.)

 Here, in the instant case, we have the following: A return filed on January 13, 1950 by the plaintiffs containing a computed tax liability of $12,532.89 shown to be due and payable and enclosed therewith a check in that precise amount; no requests for an extension of either the time for filing the return or payment of the tax; no directions or arrangements to place said remittance in the "suspense account"; and no indication that said remittance was otherwise a deposit, or a tentative payment. Further, the Collector issued a form receipt for this remittance dated Jan. 13, 1950 and bearing the Collector's stamp marked, "Paid, Jan. 18, 1950" (Exhibit P–1). The check was processed and the amount thereof was not placed in the Collector's suspense account but credited to the taxpayer's account on January 13, 1950 (Assessment List, Exhibit D–1). Subsequently, an interest payment of $14.42 was made on January 19, 1950 covering interest accruing on $12,532.89 from January 6 to January 13, 1950. A form receipt for this was also issued by the Collector dated Jan. 19, 1950 and, similarly, bearing the Collector's stamp marked, "Paid, Jan. 20, 1950" (Exhibit P–2). This interest payment is also shown on the Assessment List marked as Exhibit D–1. The $7,000 and $829.55 remittances made in behalf of the subsequent deficiency were actually sent to the Collector on October 30, 1950 and January 15, 1951, respectively, but were not credited to plaintiffs' account by the Collector until January 23, 1951 and January 17, 1951, respectively, thereby bringing their treatment clearly within the reasoning of the Rosenman case, supra, and constituting the basis for the refund allowed.

It is the conclusion of the Court that the plaintiffs here deemed an estate liability of $12,532.89 to be due and payable on January 13, 1950, or previously thereto inasmuch as a week's interest thereon was paid by the plaintiffs on January 19, 1950. The plaintiffs made no protest as to the amount due nor did they indicate that they would contest the tax liability. There were no "interim arrangements," "deposits" or "tentative payments." The remittance was sufficient and effective to discharge *what they deemed to be a liability* in its entirety. For as far as they were concerned the return was proper, and sufficiently defined their entire tax obligation and liability. The defendant treated the remittance as payment of a defined tax liability due and payable on the aforementioned date, as indicated by the receipt issued therefor (Exhibit P–1). Thus, inasmuch as both the plaintiffs-taxpayer and the defendant-government have treated the remittance of $12,532.89 on January 13, 1950, and stamped "Paid" by the Collector on January 18, 1950, as payment of the tax liability due from the estate, it is the opinion of this Court that under these circumstances said remittance does constitute "payment" within the purview of Section 910. Therefore, the plaintiffs are barred from asserting their claim for refund, said claim having been made on January 5, 1954, more than three years after payment of the $12,532.89 tax on January 18, 1950, the day the receipt therefor was stamped "Paid" by the Collector.

The same result would obtain if the date of payment was considered to be February 14, 1950, the date of the signing of the Assessment Certificate by the Commissioner. The plaintiffs' contention that notice of formal assessment must be sent to the taxpayer within a reasonable time is without merit. Suffice it to say that the three year limitation runs from the date of payment (from which date the taxpayer has a

fair opportunity to determine whether he has a claim for refund) and not from the date of assessment of such tax. The assessment of tax of which they claim they had no notice was the selfsame tax liability which they themselves had determined to be due and payable and in fact remitted on January 13, 1950.

Motion for summary judgment in favor of the plaintiffs is denied and the motion for summary judgment in favor of the defendant is granted.

Counsel will prepare an appropriate order.