FARNSWORTH & CHAMBERS COM-
PANY, Inc., Plaintiff,

v.

Robert L. PHINNEY, Defendant.

Civ. A. No. 12590.

United States District Court
S. D. Texas,
Houston Division.

Nov. 12, 1959.

Fulbright, Crooker, Freeman, Bates & Jaworski (Charles W. Hall and C. W. Wellen), Houston, Tex., for plaintiff.

Charles Mehaffey, Tax Division, Dept. of Justice, Washington, D. C., and William B. Butler, U. S. Atty., and Myron M. Sheinfeld, Asst. U. S. Atty., Houston, Tex., for defendant.

INGRAHAM, District Judge.

The case is before the court upon the defendant's motion to dismiss the taxpayer's complaint and upon the taxpayer's motion to produce documents. The

question is whether the court has jurisdiction over an action for tax refund where the government has declined to proceed with civil proceedings for the collection of an alleged tax deficiency and where no notice of deficiency, assessment of tax, or notice and demand for payment have been made.

As the result of an extensive investigation of the taxpayer corporation by the Internal Revenue Service, on April 14, 1958, indictments were returned against Richard Farnsworth, chairman of the board of the taxpayer corporation, Lee Blocker, treasurer of the corporation, H. A. Lott, vice-president of the corporation, Lorn D. Frazier, vice-president of the corporation, and Alan Farnsworth, purchasing agent and employee of the corporation, charging them with willfully and knowingly attempting and conspiring to evade and defeat a large part of the taxes due and owing by the taxpayer corporation for the calendar years 1951, 1952, 1953 and 1954.[1]

On May 26, 1958, the president and attorneys for the taxpayer conferred with the defendant, District Director of Internal Revenue, requesting an opportunity to review the alleged tax deficiencies with which the taxpayer understood it was charged. The District Director clearly indicated that the I.R.S. could not discuss any of the merits of the case from a civil standpoint as long as the case had any criminal potential. Throughout the conference he reiterated that the I.R.S. could receive an "advance payment" of the alleged deficiency to avoid the further accrual of interest. In the context of these statements an attorney for the taxpayer delivered to the District Director a check for $2,770,966.-75, which the latter stated that he was receiving as advance payment and which liability he would be willing to discuss when the Attorney General advised him

that the criminal features of the case had been fully disposed of. This check had written across its face, "Payment under protest of deficiencies and interest claimed for the years 1951, 1952, 1953, 1954, and 1955." The representatives of the taxpayer in no way drew particular attention to or attached particular importance to this statement.

The District Director has sworn that he accepted the check as he was required to do and placed the same in an advance payment suspense account. He alleges that it was not credited to any account of the taxpayer or any of its affiliates because no such accounts were or are in existence. No 30-day or 90-day letter has been sent to the taxpayer, he states, or to any of its affiliates with respect to any additional tax or other liability for any of the years 1951 to 1955, both inclusive. No notice of deficiency nor demand for payment of any additional taxes has been served on the taxpayer or any of its affiliates for those years, he maintains. Finally, no notice of assessment has been given and no assessment of any additional deficiency of taxes for the taxpayer or any of its affiliates for those years has been made, according to the District Director, and no payment has been made by the taxpayer of any assessment on which a suit for refund could be based.

On May 27, 1958, the attorneys for the taxpayer lodged with the District Director tax refund claims on Forms 843 for the sums that they had tendered on May 26. The District Director states that these forms were not considered as valid claims for refund and that no action was taken on them, since the tender of the check was not made as payment on any determined tax liability of the taxpayer or any of its affiliates for any period of time. He advised the attorneys for the taxpayer on June 3, 1958, that, since no

---

1. Blocker, Lott and Frazier were each convicted upon their pleas of nolo contendere and sentenced to imprisonment. Each has appealed therefrom and the appeals are pending in the Court of Appeals. Richard Farnsworth and Alan Farnsworth were tried upon their pleas of not guilty. Alan Farnsworth was acquitted upon each of the five counts of the indictment and no verdict was returned as to Richard Farnsworth, resulting in a mistrial as to him.

assessment of taxes had been made in this case, there was no basis, legal or otherwise, for consideration by the I.R.S. of the Forms 843 lodged at his office and that the money would be returned upon receipt of written request.

■ The taxpayer contends that it has met every statutory requirement necessary to maintain this action, that a formal assessment of tax is not required before a suit for the refund of taxes can be maintained, that liability for taxes does not depend upon formal assessment and collection of taxes is legal and proper without it, and that the application of the Internal Revenue Code in the manner sought by the Government would result in such a gross miscarriage of justice in this case as to render the statutes unconstitutional as so applied.

The defendant contends that the taxpayer may not maintain an action to recover an advance payment where there has been no assessment of any deficiency, no notice, no demand for payment, no payment, and, therefore, no overpayment. Thus it maintains that the court has no jurisdiction over an action for refund of an advance payment of taxes and that its motion to dismiss should be granted.

In the opinion of the court the defendant's motion to dismiss should be granted. The taxpayer appears to have forced payment upon the Government in order to obtain the jurisdiction of this court over a refund claim. The circumstances under which the check was tendered were such that no reasonable person could have believed that the taxpayer was paying its alleged tax liability upon computed tax deficiencies. The District Director was fully justified in believing that the check tendered to him was an advance payment solely to stop further accrual of interest thereon, since he had clearly stated the limited basis upon which he could receive payment and since he had indicated that the merits of the case from a civil standpoint could not be discussed as long as the case had any criminal potential. Under these circumstances, if the attorneys for the taxpayer had any other intention in tendering the advance payment, it may be doubted whether they were acting in good faith in their relations with the District Director. Thus the court believes that the money paid by the taxpayer was not payment in satisfaction of any determined tax liability and cannot be considered "collected" within the terms of the Internal Revenue Code. It was merely an advance payment for the purpose of avoiding the further accrual of interest and can be returned to the taxpayer upon receipt of written request by the District Director.

Under Title 28 United States Code, Section 1340, the district courts have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue. The requirements necessary for bringing such a suit are contained in Title 26 United States Code, Section 7422, entitled "Civil actions for refund":

"(a) No suit prior to filing claim for refund.—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof."

■■ Clearly jurisdiction over suits for tax refunds is predicated upon assessment or collection of the taxes. An analysis of the administrative procedure involved in the determination, assessment, and collection of income taxes indicates that assessment is the determinative factor in fixing the tax liability of a taxpayer. Since no assessment has been made in the present case, the court has no jurisdiction under Section 7422 over a suit for refund of tax. Furthermore, even if the payment made by the taxpayer could be considered payment in

satisfaction of any determined tax liability, there is strong authority for the proposition that such a payment could not be considered as collected in the absence of an assessment.

Under Title 26 United States Code, Section 6201, the Commissioner of Internal Revenue is authorized and required to make the inquiries, determinations, and assessments of all taxes and penalties imposed by that title, or accruing under any former internal revenue law, where such taxes have not been duly paid by stamp at the time and in the manner provided by law. Under Title 26 United States Code, Section 6202, if the mode or time for the assessment of any internal revenue tax (including interest, additional amounts, additions to the tax, and assessable penalties) is not otherwise provided for, the Secretary or his delegate may establish the same by regulations. Similar provisions appeared in Sections 3640 and 3644 of the Internal Revenue Code of 1939.

The procedure for tax determination, assessment, and collection begins with the voluntary filing of a return by a taxpayer and with the receipt of payments made voluntarily in connection with the return. Sometimes a taxpayer's determination of his tax liability is referred to as the "self-assessment system". Certainly the efficient collection of revenue depends upon an honest and informed determination of tax liability by a taxpayer, since only a small minority of the returns can be audited by the I.R.S. But a taxpayer really does no more than compute the amount that he believes he owes and makes a payment thereon, while assessment is the act of the sovereign determining the amount of tax liability that must be satisfied. In Atlantic Mutual Insurance Company v. McMahon, D.C.S.D.N.Y.1957, 153 F.Supp. 48, 51, the district court stated, "Self-assessment is not a technical term of tax law, but merely a descriptive phrase colloquial in nature. No basis in the statute or regulations has been cited to sustain the legal basis of the Government's self-assessment concept. Apparently none exists * * *."

The returns and remittances thereon are received in the cashier branch of the collection division of the offices of the District Directors, where the returns are labelled and filed and the remittances are deposited in the banks. The returns are listed numerically under the numbers given each return by the cashier's office on an assessment list. At this point only the name and address of a taxpayer, together with the serial number assigned to the particular return, are listed on the assessment list. After the collection division has checked the returns for execution, form, and mechanical accuracy, the tax is then ready to be entered on the assessment list opposite the name of the taxpayer. The total amount of tax is entered in the debit column. The amount paid with the return is entered in the credit column, and the amount remaining due is entered in the new balance column. The list of such assessments is then signed by an appropriate official in the District Director's office. 9 Mertens, Law of Federal Income Taxation (Zimet Revision, 1958), Sec. 49.100, et seq.

When the collection division has processed those returns showing refunds due and returns received with insufficient or no remittance, the returns are forwarded to the audit division where returns are selected for audit which appear to contain material irregularities or which are of so complex or important a nature that an audit is advisable. Some returns are selected for a field examination which may involve auditing of a taxpayer's books and records. Where the field examination develops evidence of fraud, a special procedure comes into force for the recommendation of criminal prosecution. Generally, if the appropriate officials recommend prosecution, the case is referred directly to the Department of Justice. No further negotiations are had with respect to the civil aspects of the case until the criminal aspects have been resolved. 9 Mertens, Law of Federal Income Taxation (Zimet Revision, 1958), Sec. 49.100, et seq.

If the field examination does not develop evidence of fraud, a taxpayer is informed of the examiner's findings and is offered an opportunity to come to an agreement with the I.R.S., as the case proceeds through the stages of preparation of the examiner's report, review in the audit division, and informal conference with the officials of the audit division. If a taxpayer does not agree with the decision reached at the informal conference, the examination report will be prepared and a copy furnished to the taxpayer, together with a preliminary notice of proposed deficiency known as a 30-day letter. The 30-day letter affords a taxpayer a period of 30 days in which to decide whether he will file a formal protest and request that the case be transferred to the appellate division of the district, whether by request or failing to respond within the 30-day period he will secure the issuance of the statutory notice from which an appeal may be taken to the Tax Court, or whether he will execute the agreement form enclosed with the 30-day letter and thereby permit immediate assessment of the proposed deficiency. 9 Mertens, Law of Federal Income Taxation (Zimet's Revision, 1958), Sec. 49.100, et seq.

If the audit division is unable to arrive at an agreement with a taxpayer and receives no response to the 30-day letter, the District Director then issues the statutory notice of deficiency governed by Title 26 United States Code, Sections 6212 and 6213. A taxpayer receiving the statutory notice of deficiency may file a petition with the Tax Court, execute a waiver consenting to an immediate assessment, or do nothing, in which event the deficiency will be assessed upon the expiration of the statutory period. Title 26 United States Code, Section 6213(a) expressly provides that except in the case of jeopardy assessments, " * * * no assessment of a deficiency in respect of any tax imposed by subtitle A or B and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration

of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final." 9 Mertens, Law of Federal Income Taxation (Zimet's Revision, 1958), Sec. 49.-100, et seq.

Thus assessment can occur at various stages of the procedure for tax determination, assessment, and collection. In all cases, however, it is the determinative factor in fixing the tax liability of a taxpayer at that particular stage. When the return is filed, the Secretary or his delegate has statutory authority to assess all taxes determined by the taxpayer or by the Secretary or his delegate as to which returns or lists are made under this title. 26 U.S.C. § 6201(a) (1). Supplemental assessments may be made by the Secretary or his delegate at any time within the period prescribed for assessment whenever it is ascertained that any assessment is imperfect or incomplete in any material respect. 26 U.S.C. § 6204. Except as provided by statute, the Secretary or his delegate may establish the mode or time for assessments under Title 26 United States Code, Section 6202, while Section 6203 provides that the assessment shall be made by recording the liability of the taxpayer in the office of the Secretary or his delegate and that, upon request of the taxpayer, the Secretary or his delegate shall furnish the taxpayer a copy of the record of the assessment.

The administrative procedure in the I.R.S. is designed to afford a taxpayer the opportunity to be informed about alleged tax deficiencies, to confer with the appropriate officials concerning disputed liabilities, and to settle his tax liability amicably, except where the field examination has developed evidence of fraud. This procedure "holds off the axe of assessment" which otherwise might fall upon a taxpayer at any time during this period. But, most important of all, the Internal Revenue Code itself specifies that, except in the case of jeopardy assessments, no assessment of a deficiency can be made until the statutory notice

has been given, or until the statutory period has expired, or, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. This provision clearly shows that Congress intended that the determinative act of tax assessment should be held in abeyance while a taxpayer seeks redetermination of his alleged deficiency by the Tax Court.

That a taxpayer may waive these safeguards, may permit immediate assessment of the proposed deficiency, and may make payment of the tax does not entitle him to have an assessment made where the I.R.S. is not willing to proceed with the civil aspects of his case. Title 26 United States Code Section 6213(b) (3), added by the Internal Revenue Code of 1954, only indicates that a payment may be made and an assessment entered thereon during the process of redetermination of an alleged tax deficiency but that such payment and assessment will not deprive the Tax Court of jurisdiction if payment is made subsequent to the mailing of a notice of deficiency. Just as payment received with a tax return is not collected until an assessment has been made, payment and collection of the tax arising out of a deficiency does not occur until the assessment thereon is entered. Section 6213(b) (3) is another safeguard for a taxpayer and a limitation on the exercise of the determinative power of tax assessment by the Government. The cases cited by defendant bear out the foregoing analysis.

In Rosenman v. United States, 1945, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535, the Supreme Court held that the period of limitations for filing claims for refund did not begin to run from the time of a remittance which in effect was a deposit and which the Collector placed in a suspense account for the credit of the taxpayer. The court stated at 323 U.S. 661, 65 S.Ct. 537.

"Claims for tax refunds must conform strictly to the requirements of Congress. A claim for refund of an estate tax 'alleged to have been erroneously or illegally assessed or collected must be presented to the Commissioner within three years next after the payment of such tax.' * * * The claim is for refund of a tax 'alleged to have been erroneously or illegally assessed or collected,' and the claim must have been filed 'after the payment of such tax', that is, within three years after payment of a tax which according to the claim was erroneously or illegally collected. The crux of the matter is the alleged illegal assessment or collection, and 'payment of such tax' plainly presupposes challenged action by the taxing officials."

In that case the court further stated at 323 U.S. 622, 65 S.Ct. 538.

"But * * * the taxpayer did not discharge what he deemed a liability nor pay one that was asserted. There was merely an interim arrangement to cover whatever contingencies the future might define. The tax obligation did not become defined until April 1938. * * * The Government does not consider such advances of estimated taxes as tax payments. They are, as it were, payments in escrow. They are set aside, as we have noted, in special suspense accounts established for depositing money received when no assessment is then outstanding against the taxpayer. The receipt by the Government of moneys under such an arrangement carries no more significance than would the giving of a surety bond. Money in these accounts is held not as taxes duly collected are held but as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due."

In the case of Thomas v. Mercantile Nat. Bank at Dallas, 5 Cir., 1953, 204 F.2d 943, the court held that the statute of limitations did not begin to run against a claim for refund before a deficiency came into existence upon certification of assessment lists or before there was in fact an ascertainable overpayment. In that case the deposit was

not even placed in a suspense account, but was credited directly to the taxpayer's account. The court stated at 204 F.2d 944:

"The deficiency assessment did not come into existence until the Commissioner certified the assessment list * * *. The waiver signed by the taxpayer on August 2, 1945, did not bring the deficiency into existence. It merely waived the ninety-day notice and other procedural requirements * * *.

"Until the Commissioner certified the assessment list * * * there was no deficiency assessment, and no liability on the part of the taxpayer, and consequently nothing to pay. The sum deposited with the Collector * * * was merely an advance deposit to cover additional tax liability expected to arise thereafter. Neither the estate's liability, nor the fact that there was an overpayment, could be determined until the deficiency assessment was entered. * * *"

The other cases cited by defendant are equally persuasive. The taxpayer has not succeeded in distinguishing any of the cases cited by defendant. In fact, what better type of case could be found for ascertaining the point of determinative tax liability than one involving the statute of limitations?

In the absence of any notice of deficiency, assessment of tax, notice and demand for payment, or any payment that could be considered in any way a collection, the court has no jurisdiction under Section 7422 over a suit for refund of tax.

Prompt and effective criminal prosecution of tax evasion is essential to the proper functioning of our internal revenue system. Unless taxpayers know that the revenue laws will be enforced swiftly and effectively, self-determination of tax by taxpayers will cease to be effective. The tax liability of this taxpayer is inextricably intertwined with the alleged evasion by its principal officers and employees of taxes due and owing by the taxpayer. When the defendants in the prosecution for tax evasion have been accorded the guarantees of due process of law and the criminal features of this case have been fully disposed of, the taxpayer may have its day in court.

Defendant's motion to dismiss will be granted. The clerk will notify counsel to draft and submit appropriate dismissal order.