This petition for refund of certain federal employment taxes is before the court on defendant’s motion to dismiss for lack of jurisdiction and plaintiffs opposition thereto. Defendant moves for dismissal under Rule 38(b), but since *644 the parties have presented matters outside the pleadings, we shall treat the motion as one for summary judgment and dispose of it as provided in Rule 101.
The limited issue before the court at this time is whether statutory prerequisites to our jurisdiction have been satisfied, namely, that plaintiff has made payment in full, and has filed a proper claim for refund, of the amount claimed in the petition, pursuant to I.R.C. § 7422(a), and that such refund has been disallowed or permitted to remain undecided for 6 months, pursuant to I.R.C. § 6532(a)(1). Upon consideration of the pleadings, the moving papers and briefs in support thereof, but without oral argument, we deny the Government’s motion.
I.
The Publishers Guild, Inc. (plaintiff or taxpayer), during the period involved, was engaged in the retail sale of books and publications to the public; it employed certain employees whom both parties treat as subject to withholding of employment and income taxes, and, in addition, contracted for the services of a number of salesmen whose employment status, for tax purposes, is the underlying issue raised in the petition. During the taxable years involved, plaintiff filed quarterly and annual employment tax returns with the Internal Revenue Service (IRS or Service) and, with such filing, collected and paid over Federal Insurance Contributions Act (FICA) taxes, Federal Unemployment Tax Act (FUTA) taxes, and income withholding taxes (WT), based on the earnings of those enumerated persons whom plaintiff considered to be its common law employees, not including the salesmen.
In 1975 the Service conducted an audit of plaintiffs book and periodical sales business. Plaintiff, on April 28, 1976, filed "amended” forms 941 (quarterly FICA and WT returns) covering certain quarters in each of the years believed to be the subject of anticipated deficiencies (1973, 1974, and 1975); plaintiffs salesmen were listed as "employees solely for litigation purposes”; and WT, FICA, and FUTA taxes of $2,677.91 were paid to the Service. Simultaneously, plaintiff filed formal claims for refund of these same taxes, using form 843 provided for that purpose, along with a letter explaining that plaintiff undertook the *645 payment/refund procedure solely as "an expeditious means of determining the issue of the status of the persons involved for employment tax purposes.” The letter stated, among other things, that "[t]hese names are submitted solely as part of the statutory prerequisite for litigating the issue in a federal court.”
Thereafter, on May 11, 1976, the IRS issued a "30-day letter” proposing upward adjustments of taxes for the years 1973 and 1974 in the amount of $340,264.11, plus a penalty of $4,697.22. An attached Form 4666, "Summary of Employment Tax Audit,” stated that the basis of the proposed additional tax was that "[s]alesmen are Employees & not independent contractors.” Taxpayer’s attorney, on May 14,1976, wrote to the Director, IRS Service Center, Holtsville, New York, requesting prompt issuance of a notice of disallowance of the April 28, 1976, claims, and on May 19, 1976, submitted a letter to the Audit Division of the district director’s office of IRS in New York City acknowledging receipt of the 30-day letter, submitting a power of attorney, and requesting an extension of time within which to protest the 30-day letter. A protest was filed on July 22, 1976.
On August 9, 1976, the IRS mailed several checks totaling $2,776.75 directly to taxpayer, accompanied by a printed form, Notice 134, which explained a number of symbols, some of which appeared on the checks. On August 13,1976, plaintiffs attorney discussed the 30-day letter and protest in an informal conference with an IRS employee. The Service’s memorandum of that conference reports nothing having been said about issuance of the refund checks, although the agent did note that "Mr. Lyman is definitely prepared to litigate this matter — in fact T/P has paid part of this adjustment, filed refund claims & has requested a prompt notice of disallowance.” On November 8, 1976, plaintiffs attorney, pursuant to the power of attorney, executed a Form SS-10, "Consent to Fix Period of Limitation on Assessment of Employment Taxes,” extending the statute of limitations on assessment for the year 1973 to January 31, 1978.
The key event, undisputed by either party except as to its proper characterization, took place on November 29, 1976. Forwarding checks totaling $2,776.75, plaintiffs attorney *646 wrote the Service Center that he was "returning” the money taxpayer had received in August because of a perceived administrative error:
Accordingly, the amounts refunded are being repaid by the attached checks * * *. These payments are made so that the statutory time requisite to litigation on tax issues is not interrupted. [Emphasis supplied.]
Plaintiff appears to have heard nothing further from the Service, although defendant indicates that an assessment of an amount equal to the amount of tax involved in the IRS payment of August 9, 1976, and repaid by plaintiff on November 29, 1976, was "assessed” on April 11, 1978. Plaintiff filed a petition in this court on April 13, 1978, stating as its basis for the suit the claims for refund which it filed on April 28, 1976.
The Government asserts in its motion that the August 1976 checks received by the taxpayer constituted refunds of the amounts claimed on April 28, 1976, and therefore allowance of those claims; that the November 1976 payments by plaintiff were volunteered, since they were not made pursuant to an assessment; that the Service had in fact made no determination as to plaintiffs tax liability; and that, in any case, no claim for refund of the November payments was filed. On this basis, argues the Government, the court is without jurisdiction to consider the merits of plaintiffs claims that its salesmen are independent contractors, not employees.
Plaintiff argues that the payments sent to plaintiff in August were an administrative error, noting that the Service not only bypassed the power of attorney on file and set forth no reason for the "refund,” but had not yet even completed the audit process. Plaintiff asserts it was entitled to believe that the Service had not changed its position on the status of the salesmen in the space of 3 months, with a 30-day letter outstanding for such a large amount, and that plaintiffs payment in November constituted a restoration of mistakenly refunded taxes. Therefore, plaintiff argues, the original claims were outstanding and, upon expiration of the 6-month period required by the statute, plaintiff was entitled to file suit in this court.
II.
Defendant’s argument assumes that the issuance of the checks by IRS on August 9,1976, nullified plaintiffs claims *647 of April 28, 1976; but that is the critical question to be decided here, not whether recovery of plaintiffs repayment of November 29, 1976, is barred for the reason that the repayment constituted a voluntary payment which was not made in satisfaction of any assessed or otherwise determined liability. Defendant’s reliance on Farnsworth & Chambers Co. v. Phinney, 279 F.2d 538 (5th Cir. 1960), is misplaced. In that case, the taxpayer on May 26, 1958, submitted to the district director a check which bore the notation "Payment under protest of deficiencies and interest claimed for the years 1951, 1952, 1953, 1954, 1955.” On May 27, 1958, attorneys for the taxpayer lodged formal claims for refund of the amounts so paid. On June 3, 1958, the district director advised taxpayer’s attorneys by letter that—
"* * * Since no assessment of taxes has been made in this case, there is no basis, legal or otherwise, for consideration by the Internal Revenue Service of the forms 843 you lodged at this office. Consequently the advance payment cannot be refunded as claimed; however, we shall return the money upon receipt of your written request.” [279 F.2d at 539.]
Farnsworth & Chambers, for reasons of its own, preferred to pursue the matter in court, and the courts upheld the district director’s action and found a lack of jurisdiction. Although the reports do not state the type of taxes involved, it is clear from the discussion of deficiency assessment procedures by both the court of appeals and the district court (178 F.Supp. 330 (S.D. Tex. 1959)) that income taxes were involved in that case, whereas here we are concerned with employment taxes which are not subject to the deficiency procedures so well described by the lower court in Farnsworth & Chambers Co., supra. The holding there is not applicable to the facts of this case.
This is not to say that only income, estate, and gift taxes are subject to the requirement of assessment before a claim will lie. As pointed out in Farnsworth & Chambers Co., 178 F.Supp. at 333, ours is not a "self-assessment” tax system, but a "self-computing,” "self-determining,” or "self-reporting” system of taxation. "Assessment” is an ancient procedure in terms of tax history and is so precisely defined that it has long conjured up the image of the tax collector, *648 quill in hand, standing ready to place his imprimatur upon a list being prepared by a little man in green eyeshade who carefully notes the amount of each taxpayer’s liability alongside his name. See I.R.C. §§ 6201, 6203 and Treas. Reg. § 301.6203-1. Under those provisions some determinations of tax "shall,” while others "may,” be assessed.
The threshold question here is whether the April 28, 1976, claims were for refund of taxes "erroneously or illegally assessed or collected.” I.R.C. § 7422. The modern introduction of withholding and computer accounting appears to have put a strain upon the "scrivener” image of assessment. There are now special rules of assessment, applicable to certain employment and withholding taxes, contained in I.R.C. § 6205 and the regulations thereunder.
Although it is not clear from the record that the additional amounts reported by plaintiff were technically "assessed,” we do not find it necessary for consideration of this motion to inquire into that question. The Service gives only a backhanded acknowledgment of "amended” returns (Treas. Reg. § 301.6211-l(a)), but it seems clear that plaintiffs "amended” or supplemental withholding returns complied with the requirements of I.R.C. § 6205, and plaintiff has consistently based its case on the validity of the original claims. Unlike the district director in Farn-sworth & Chambers Co., supra, the IRS here accepted the supplemental returns and the accompanying money. It even insists that the latter was refunded with interest as of August 9, 1976. Such a position would be inconsistent with an assertion of "no assessment,” had such an assertion been made. The positions and actions of both parties are consistent with an assumption that the supplemental amounts were assessed and collected, and that they were not, as in Farnsworth & Chambers, supra, merely "received” or "deposited” and subject to return whenever requested.
The question then is whether the checks issued by the Internal Revenue Service operated to frustrate plaintiffs expressed desire to litigate the legal questions raised by its claims for refund. Plaintiff has consistently kept the IRS on notice of its determination to litigate the status of its salesmen. The Service says that this can be done, but not in the manner plaintiff desires. The alternative suggested by *649 defendant was to file, before November 29, 1978, a claim for refund in respect of the amount paid on November 29, 1976. The defects in such a procedure are apparent and even if successful would only bring the parties, after much delay, to the point of litigation on the merits on the same underlying facts. They are at that point now. Despite defendant’s obvious displeasure with the procedures adopted by plaintiffs counsel, that procedure and its purpose have been consistently and insistently disclosed to defendant. We agree with plaintiffs contention that the issuance of the IRS checks on August 9, 1976, was an error and think it is one which probably was not unusual at that stage of the Service’s use of computer correspondence. Plaintiff clearly pointed out to the IRS the error and its ramifications, and got no response.
Defendant now says that the checks constituted refunds of the amounts included in plaintiffs April 28, 1976, claims for refund, yet those checks were sent directly to the taxpayer in New York, in disregard of the power of attorney on file with IRS and in disregard of the taxpayer’s address (c/o counsel in Washington), as clearly set forth on each of the forms 843 constituting the claims for refund. Defendant’s statement is also inconsistent with its assertion elsewhere that the August 9, 1976, checks issued because the May 11, 1976, 30-day letter was "no longer in effect,” whereas that letter proposed an assessment of $340,264.11 in taxes and $4,697.22 in penalties, and not the amount of $2,677.91 in taxes paid by plaintiff. Furthermore, defendant does not state why it assessed plaintiff $2,677.91 on April 11, 1978, but only that that assessment was "not for the full amount of the proposed deficiency set forth in the letter of May 11, 1976.” We do not think that plaintiff should be required to wait to see whether defendant will permit it to obtain a determination of the tax status of its salesmen or will merely refund the April 11, 1978, assessment without explanation.
Since the issuance of the checks on August 9, 1976, was erroneous, and plaintiff corrected the error and pointed it out to the IRS, defendant should have responded to plaintiff in some manner other than belatedly to require an unnecessary duplication of procedures which apparently are available if plaintiff desires to file a timely claim for *650 refund of the amounts assessed on April 11, 1978. On the basis of the record before us, we find the original claims of April 28, 1976, to have been in effect and unsatisfied when plaintiff filed this suit on April 13, 1978.
Defendant’s motion is denied and the case is returned to the trial division for further proceedings.