ROSENMAN ET AL., EXECUTORS, *v.* UNITED STATES.

No. 207. Argued December 15, 1944.—Decided January 29, 1945.

*Mr. Charles Angulo* for petitioners.

*Mr. Chester T. Lane* argued the cause, and *Solicitor General Fahy, Assistant Attorney General Samuel O. Clark, Jr., Messrs. Sewall Key, Walter J. Cummings, Jr., Miss Helen R. Carloss* and *Mrs. Elizabeth B. Davis* were on the brief, for the United States.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This is an action upon a claim for refund of a federal estate tax, and the specific question before us is whether the claim was asserted too late. The matter is governed by § 319 (b) of the Revenue Act of 1926, 44 Stat. 9, 84, as amended by § 810 (a) of the Revenue Act of 1932, 47 Stat. 169, 282, 26 U. S. C. § 910, reading as follows: "All claims for the refunding of the tax imposed by this title alleged to have been erroneously or illegally assessed or collected must be presented to the Commissioner within three years next after the payment of such tax. The amount of the refund shall not exceed the portion of the tax paid during the three years immediately preceding the filing of the claim, or if no claim was filed, then during the three years immediately preceding the allowance of the refund."

Petitioners are executors of the will of Louis Rosenman, who died on December 25, 1933. Under appropriate statutory authority, the Commissioner of Internal Revenue extended the time for filing the estate tax return to February 25, 1935. But there was no extension of the time for payment of the tax which became due one year after the decedent's death, on December 25, 1934. The day before, petitioners delivered to the Collector of Internal Revenue a check for $120,000, the purpose of which was thus defined in a letter of transmittal: "We are delivering to you herewith, by messenger, an Estate check

payable to your order, for $120,000, as a payment on account of the Federal Estate tax. . . . This payment is made under protest and duress, and solely for the purpose of avoiding penalties and interest, since it is contended by the executors that not all of this sum is legally or lawfully due." This amount was placed by the Collector in a suspense account to the credit of the estate. In the books of the Collector the suspense account concerns moneys received in connection with federal estate taxes and other miscellaneous taxes if, as here, no assessment for taxes is outstanding at the time. On February 25, 1935, petitioners filed their estate tax return according to which there was due from the estate $80,224.24. On March 28, 1935, the Collector advised petitioners that $80,224.24 of the $120,000 to their credit in the suspense account had been applied in satisfaction of the amount of the tax assessed under their return. On the basis of this notice, petitioners, on March 26, 1938, filed a claim for $39,775.76, the balance between the $120,000 paid by them under protest and the assessed tax of $80,224.24.

Upon completion, after nearly three years, of the audit of the return, the Commissioner determined that the total net tax due was $128,759.08. No appeal to the Board of Tax Appeals having been taken, a deficiency of $48,534.84 was assessed. The Collector thereupon applied the balance of $39,775.76 standing to the credit of petitioners in the suspense account in partial satisfaction of this deficiency, and on April 22, 1938, petitioners paid to the Collector the additional amount of $10,497.34, which covered the remainder of the deficiency plus interest. The Commissioner then rejected the petitioners' claim for refund filed in March of that year. On May 20, 1940, petitioners filed with the Collector a claim, based on additional deductions, for refund of $24,717.12. The claim was rejected on the ground, so far as now relevant, that the tax claimed to have been illegally exacted had been

paid more than three years prior to the filing of the claim, except as to the amount of $10,497.34 paid by petitioners in 1938. Petitioners brought this suit in the Court of Claims which held that recovery for the amount here in dispute was barred by statute, 53 F. Supp. 722. To resolve an asserted conflict of decisions in the lower courts we brought the case here.

Claims for tax refunds must conform strictly to the requirements of Congress. A claim for refund of an estate tax "alleged to have been erroneously or illegally assessed or collected must be presented to the Commissioner within three years next after the payment of such tax." On the face of it, this requirement is couched in ordinary English, and, since no extraneous relevant aids to construction have been called to our attention, Congress has evidently meant what these words ordinarily convey. The claim is for refund of a tax "alleged to have been erroneously or illegally assessed or collected," and the claim must have been filed "after the payment of such tax," that is, within three years after payment of a tax which according to the claim was erroneously or illegally collected. The crux of the matter is the alleged illegal assessment or collection, and "payment of such tax" plainly presupposes challenged action by the taxing officials.

The action here complained of was the assessment of a deficiency by the Commissioner in April 1938. Before that time there were no taxes "erroneously or illegally assessed or collected" for the collection of which petitioners could have filed a claim for refund. The amount then demanded as a deficiency by the Commissioner was, so the petitioners claimed, erroneously assessed. It is this erroneous assessment that gave rise to a claim for refund. Not until then was there such a claim as could start the time running for presenting the claim. In any responsible sense payment was then made by the application of the balance credited to the petitioners in the suspense account and by the ad-

ditional payment of $10,497.34 on April 22, 1938. Both these events occurred within three years of May 20, 1940, when the petitioners' present claim was filed.

But the Government contends "payment of such tax" was made on December 24, 1934, when petitioners transferred to the Collector a check for $120,000. This stopped the running of penalties and interest, says the Government, and therefore is to be treated as a payment by the parties. But on December 24, 1934, the taxpayer did not discharge what he deemed a liability nor pay one that was asserted. There was merely an interim arrangement to cover whatever contingencies the future might define. The tax obligation did not become defined until April 1938. And this is the practical construction which the Government has placed upon such arrangements. The Government does not consider such advances of estimated taxes as tax payments. They are, as it were, payments in escrow. They are set aside, as we have noted, in special suspense accounts established for depositing money received when no assessment is then outstanding against the taxpayer. The receipt by the Government of moneys under such an arrangement carries no more significance than would the giving of a surety bond. Money in these accounts is held not as taxes duly collected are held but as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due. See Ruling of the Comptroller General, A–48307, April 14, 1933, 1 (1935) Prentice-Hall Tax Service, Special Reports, paragraph 45. Accordingly, where taxpayers have sued for interest on the "overpayment" of moneys received under similar conditions, the Government has insisted that the arrangement was merely a "deposit" and not a "payment" interest on which is due from the Government if there is an excess beyond the amount of the tax eventually assessed. See *Busser* v. *United States,* 130 F. 2d 537, 538; *Atlantic Oil Producing Co.* v. *United States,* 35 F. Supp.

766; *Moses* v. *United States,* 28 F. Supp. 817; *Chicago Title & Trust Co.* v. *United States,* 45 F. Supp. 323; *Estate of Rogers* v. *Commissioner,* 1942 Prentice-Hall B. T. A. Memorandum Decisions, paragraph 42,275. If it is not payment in order to relieve the Government from paying interest on a subsequently determined excess, it cannot be payment to bar suit by the taxpayer for its illegal retention. It will not do to treat the same transaction as payment and not as payment, whichever favors the Government. See *United States* v. *Wurts,* 303 U. S. 414.

Exaction of interest from the Government requires statutory authority, and it merely carries out the true nature of an arrangement such as this to treat it as an estimated deposit and not as a payment which, if in excess of what should properly have been exacted, entitled the taxpayer to interest as the return on the use that the Government has had of moneys that should not have been exacted. (We need not here consider the effect of the Current Tax Payment Act of 1943, § 4 (d), 57 Stat. 126, 140.) On the other hand, by allowing such a deposit arrangement, the Government safeguards collection of the assessment of whatever amount tax officials may eventually find owing from a taxpayer, while the taxpayer in turn is saved the danger of penalties on an assessment made, as in this case, years after a fairly estimated return has been filed. The construction which in our view the statute compels safeguards the interests of the Government, interprets a business transaction according to its tenor, and avoids gratuitous resentment in the relations between Treasury and taxpayer.

*Reversed.*