**PHILLIPS–JONES CORPORATION, a New York Corporation, Plaintiff,**

v.

**James W. JOHNSON, Collector of Internal Revenue, Defendant.**

United States District Court
S. D. New York.

Oct. 10, 1957.

Roth & Riseman, New York City, for plaintiff, Eugene F. Roth and Mervin H. Riseman, New York City, of counsel.

Paul W. Williams, U. S. Atty., New York City, Milton E. Lacina, Asst. U. S. Atty., New York City, for defendant.

REEVES, District Judge.

The only question for decision in this case is whether plaintiff's claim for refund in the sum of $41,175.23 with interest from July 20, 1948, should be reduced in the amount of $26,562.96.

The reason for resisting the payment of the latter sum is based upon the contention by the government that the claim for refund of such amount was not timely filed. In the event the decision of the court should be in favor of the plaintiff, then it is agreed by the parties that a question of an offset if interposed by the Government against the judgment should be determined by this court, and jurisdiction will be retained for that purpose.

Able counsel for the parties have agreed on the facts relating to the salient features of the case. Such facts should be noted as follows:

The plaintiff duly and promptly filed its income tax returns at the end of its fiscal year (November 30th) for the years 1942 to 1946, both inclusive. Subsequently to the filing of such returns the Government, through the Internal Revenue Agent in charge, Upper New York Division, caused an examination to be made of the said several returns and suggested deficiencies because of proposed increased assessments on income and excess profits taxes; such, it was estimated, aggregated at the time $194,100.19, a credit was allowed, however, for overassessments in the sum of $12,375.01. This involved, of course, further computations and negotiations between representatives of the plaintiff and the defendant, the then-collector, who it is admitted was the Collector in charge during all the times mentioned in the complaint. On February 16, 1948, in anticipation of a deficiency assessment, the plaintiff executed a Department Form numbered 874, entitled:

"Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment"

In this waiver there was set forth the figures above mentioned. As a footnote to the waiver, the following important recital should be noted:

"Note—The execution and filing of this waiver * * * will expedite the *adjustment* (emphasis mine) of your tax liability as indicated above. It is not, however, a final closing agreement under section 3760 of the Internal Revenue Code [1939, 26 U.S.C.A. § 3760], and does not, therefore, *preclude* (emphasis mine) the assertion of a further deficiency in the manner provided by law should it *subsequently* (emphasis mine) be determined that

additional tax is due, nor does it extend the statutory period of limitation for refund, assessment, or collection of the tax."

This agreement was delivered to the named revenue agent on February 18, 1948. It was accompanied by a check bearing date February 16, 1948, in the sum of $218,454.82. This sum of money was credited by the defendant on his records to an account maintained by him and numbered "9–D", which account is commonly termed a "suspense account." On that date no assessment had been made with respect to the suggested deficiencies. This was not done until June 25, 1948, when the Commissioner of Internal Revenue formally assessed deficiencies on income and excess profits taxes, with interest, in the gross sum of $233,067.28. This sum was satisfied by the plaintiff, by the cash deposit, by additional cash payments, and by credits concerning which there is no dispute. By such settlement, on July 20, 1948, the defendant transferred the said $218,454.-82 out of his "9–D" account into the Revenue Collections Account, and, in so doing, offset the said amount in part against the deficiencies so assessed. It should be stated that the other credits above mentioned were allowed on July 12 and July 20, 1948, and May 16, 1949.

On June 7, 1950, plaintiff filed its claim for refund covering the fiscal years mentioned for the total sum of $41,175.23. The basis of this claim for refund was substantially as follows:

In 1939 certain municipalities in the State of Pennsylvania offered an inducement to the plaintiff to move to, or locate its factory operations in said communities, and to consummate such inducement, transferred buildings with an aggregate value of $104,023.58. In reporting its income and excess profits taxes for the years mentioned it took a depreciation on such properties on the theory that such were equity invested capital.

Such treatment was disallowed by the Government, resulting in an assessment of deficiencies in the income and excess profits taxes of the plaintiff for the years mentioned.

Apparently the law was uncertain at the time. On May 15, 1950, the United States Supreme Court in the case of Brown Shoe Co. v. Commissioner of Internal Revenue, 339 U.S. 583, 70 S.Ct. 820, 94 L.Ed. 1081, held in substance that such contributions to capital were in fact invested capital and that such should not be restricted to contributions of persons having a proprietary interest but that those of community groups should be treated as invested capital. When apprized of this ruling, the plaintiff immediately filed its claim for refund.

It is agreed that it is entitled to such refund unless the deposit of February 18, 1948 should be construed as a payment. It is the contention of the Government that it was such payment, and, that, perforce the provisions of section 322, Title 26 U.S.C.A. the claim of the plaintiff is barred by limitation.

On the other hand the plaintiff contends that the statute did not begin to run until the assessment was made on June 25, 1948, or when the transfer of the fund was made on July 20, 1948. Either of these dates would be within the two year period of limitations.

1. Adverting to subparagraph (b) (1) of said section 322, it is provided:

"Unless a claim for credit or refund is filed by the taxpayer * * * within two years from the time the tax was paid, no credit or refund shall be allowed * * *."

The agreement or waiver signed by the plaintiff on February 16, 1948 specifically waived the procedure outlined by section 272, Title 26 U.S.C.A. relating to the subject of "Assessment of Deficiencies, etc." This amounted to little more than the waiver of notice. The agreement specially provided that it was not a closing agreement within the terms of section 3760, Title 26 U.S.C.A.

Closing agreement under subparagraph (b) of the latter section becomes final "if such agreement is approved by the Secretary, the Under Secretary, or an

Assistant Secretary, *within such time as may be stated in such agreement,*" (emphasis mine). And, in that event, "such agreement shall be final and conclusive, \* \* \*."

When the said waiver was signed, being form 874, it was specifically agreed that the purpose was only to "expedite the adjustment of your tax liability."

2. The authorities are at one in holding that under such circumstances the payment of the tax was not made at the time the deposit was received by the Collector. The case of Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535, is quite similar as to the facts. In commenting (323 U.S. loc. cit. 662, 65 S.Ct. loc. cit. 538,) the court said in relation to a transfer by a claimant to the Collector of a check:

"But on December 24, 1934, the taxpayer did not discharge what he deemed a liability nor pay one that was asserted. There was merely an interim arrangement to cover whatever contingencies the future might define. The tax obligation did not become defined until April 1938. \* \* \* The receipt by the Government of moneys under such an arrangement carries no more significance than would the giving of a surety bond. *Money in these accounts is held not as taxes duly collected are held but as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due.*" (Emphasis mine.)

A similar ruling was made by Judge Graven of the Northern District of Iowa in Dubuque Packing Company v. United States, D.C., 126 F.Supp. 796, and his decision was affirmed by the Eighth Circuit Court of Appeals in 233 F.2d 453.

The Second Circuit followed the same principle in Lewyt Corp. v. Commissioner of Internal Revenue, 215 F.2d 518.

And, on July 12, 1957, Judge Dawson for the Southern District of New York, in Atlantic Mutual Insurance Company v. McMahon, D.C., 153 F.Supp. 48, held to the same effect.

3. It is the contention of able counsel for the defendant that, perforce the provisions of section 56(d), Title 26 U.S.C.A., that,

"A tax imposed \* \* \* or any installment thereof, may be paid, at the election of the taxpayer, prior to the date prescribed for its payment."

A casual inspection of this section of the statute shows that it refers to "Income Tax", "Returns and Payment of Tax." Clearly it refers to what has been designated as self-assessments and relates to the right of a taxpayer, after he himself has fixed the amount of his tax, to meet payment of the tax "prior to the date prescribed for its payment."

4. In the instant case, when the deposit was made the Collector did not know (nor did the plaintiff know) what deficiency would finally be determined, and when so determined the deposit was transferred to the credit of the Government. This determination by the Collector under the Brown Shoe Co. case, supra, was erroneous, and the plaintiff was within its rights to assert a claim, which it did within two years after the payment.

It would follow that plaintiff should have judgment, not only for the $14,612.-67, but for the $26,562.96, which aggregate the total amount sued for. By its complaint the plaintiff only asks interest from and after July 20, 1948, the date when the transfer of the deposit was actually made.

Counsel for plaintiff will prepare and submit an appropriate judgment entry, together with proposed findings of fact and conclusions of law. And, after that, the question of offsets, if there be such, will be considered and ruled.

The Collector had probable cause to resist the claim for refund.