**AMERICAN PRESIDENT LINES, LTD.,**
Appellant,

v.

**UNITED STATES of America.**

No. 12700.

United States Court of Appeals
Third Circuit.

Argued March 16, 1959.

Decided April 7, 1959.

Vern Countryman, Washington, D. C. (David F. Anderson, Berl, Potter & Anderson, Wilmington, Del., Warner W. Gardner, Shea, Greenman & Gardner, Washington, D. C., on the brief), for appellant.

Carl C. Davis, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Leonard G. Hagner, U. S. Atty., Wilmington, Del., Samuel D. Slade, George Jaffin, Robert D. Klages, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before McLAUGHLIN and HASTIE, Circuit Judges, and MORRILL, District Judge.

PER CURIAM.

Libellant sued to recover claimed excessive charter payments. Three charters each covering the two ships in question are involved. In an exhaustive, sound opinion [1] Chief Judge Wright held as to all three charters that the libel is patently inadequate on the merits to afford relief and that claims under the first two charters were barred by the statute of limitations. Regarding the latter,

---

1. D.C.1958, 162 F.Supp. 732.

in essence the court found that the basic rate of charter hire had to be calculated on the unadjusted sales price of the ships and that this is determined by halving the prewar domestic cost; that on December 12, 1947, libellant had all the information necessary from which to arrive at the unadjusted statutory sales price; that after each monthly payment it could have commenced an action to recover the alleged excessive exactions and at any time could have brought a declaratory judgment action. We agree with the district court that there is no doubt of the finality of the monthly payments. They were in no sense deposits, as in Rosenman v. United States, 1945, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535. They would have been subject to some refund in the event the final floor price was less than the estimated floor price. That had to await compilation of certain cost data. But the monthly payments were in no sense tentative pending a subsequent interpretation of the relevant statutory and charter provisions. The court therefore rightly held that the cause of action founded on the first two charters had matured more than two years prior to the commencement of this suit and was barred by the statute of limitations, 46 U.S.C.A. § 745.

In support of its conclusion that libellant had failed to make out a case on the merits regarding all three charters, the district court held, and we are satisfied rightly, that, as clearly shown from the documents executed by the parties, their specific intent was to procure a stipulated rate of hire, either the statutory sales price or floor price whichever was higher. We think the court's view was sound in construing Section 5(b) of the Merchant Ship Sales Act of 1946, 50 U.S.C.A.Appendix, § 1738 [2] as merely stating the bounds of the Commission's discretion which as far as relevant here are: (1) That the charter hire for any vessel chartered under Section 5(b) shall be fixed by the Commission at such rate as the Commission determines to be consistent with the policies of the Act; and (2) That such rate shall not be less than 15% per annum of the statutory sales price (computed as of the date of charter) except upon the affirmative vote of not less than four members of the Commission.

We agree with the district court that there is nothing in this record from which it could be fairly concluded that the hire charged and paid " * * * did not conform with the declared purport of the Act. The amounts charged were clearly within sound economic limits and in no manner could they be termed unconscionable. In all instances of charter hire the Commission had to refrain from contracting for hire which would be far less than the market could bear. For if the hire were made too attractive the pronounced policy to demise vessels outright would be thwarted. No prudent business man would purchase a commodity which could be leased at a comparatively more favorable price." [162 F.Supp. 743.] We further agree that " * * * the rate of hire provided for by the charters did not violate any portion of § 5(b) of the Merchant Ship Sales Act of 1946."

Appellant's final argument that the floor price is, in any event, less than the unadjusted statutory sales price depends as the district court finds upon the proper construction of Section 3(e) of the Act.[3] We are in accord with the trial

2. The pertinent part of Section 5(b) reads:

"The charter hire for any vessel chartered under the provisions of this section shall be fixed by the Commission at such rate as the Commission determines to be consistent with the policies of this Act; but, except upon the affirmative vote of not less than four members of the Commission, such rate shall not be less than 15 per centum per annum of the statutory sales price (computed as of the date of charter)."

3. Section 3(e) reads:

" 'Domestic war cost' as applied to any type of vessel means the average construction cost (without national defense features) as determined by the Commission, of vessels of such type delivered during the calendar year 1944, except in

court in its conclusion that there is nothing in the section which calls for delivery of a vessel during a period of war production in order to have domestic war cost and that " * * * the respective vessels were constructed during a period representative of war production costs. The respondent therefore correctly applied the definition enunciated in § 3(e) when it based the floor price estimation on the actual construction costs, since the vessels were of unique construction."

The judgment of the district court will be affirmed.

case of any type of vessel the principal deliveries of which were made after the calendar year 1944, there shall be used in lieu of such year 1944 such period of not less than six consecutive calendar months as the Commission shall find to be most representative of war production costs of such type."