**C & R INVESTMENTS, INC.** (formerly Sherold Crystals, Inc.), a Corporation, Plaintiff,

v.

The **UNITED STATES** of America, Defendant.

No. KC–2016.

United States District Court
D. Kansas.

Jan. 6, 1967.

Rehearing Denied June 8, 1967.

Claude L. Rice and Clarence H. Wood, of Rice, Groner, Nugent & Baska, Kansas City, Kan., for plaintiff.

Newell A. George, U. S. Atty., and Thomas E. Joyce, Asst. U. S. Atty., Kansas City, Kan., Elmer Hoge, Asst. U. S. Atty., Topeka, Kan., Mitchell Rogovin, Asst. Atty. Gen., Jerome Fink and Giora Ben-Horin, Attys., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OF DECISION

ARTHUR J. STANLEY, Jr., Chief Judge.

This action for refund of certain internal revenue taxes assessed against and paid by the plaintiff is now before the court for disposition following trial. This court has jurisdiction. 28 U.S.C.A. § 1346(a) (1).

Trial was had to the court sitting without jury. It is therefore incumbent upon this court to make appropriate findings of fact, as well as conclusions of law. With respect to the former, the court finds, from the stipulations of the parties and the evidence adduced at trial, the following facts to be material to the issues presented.

The parties are in agreement, as indicated by their respective suggested findings of fact, as to the bulk of the facts material to this case. These suggested findings upon which the parties are agreed may and will be considered by the court as stipulations of fact. They are as follows:

On March 15, 1954 the plaintiff (then known as Sherold Crystals, Inc.), a wholly owned subsidiary of Standard Coil Products Co., Inc., filed with the District Director of Internal Revenue at Wichita, Kansas a document described as Internal Revenue Form 7004, an application for extension of time to file a corporate income tax return and statement in lieu of a tentative return, for the year 1953, which document was accompanied by plaintiff's check in the amount of $18,000, as partial payment for its estimated 1953 tax liability. This amount was accepted by the Wichita director and placed in a suspense account maintained by him in favor of plaintiff. Plaintiff did not file a final income tax return for the year 1953. Instead, on May 25, 1954, Standard Coil, the then owner of all the stock of plaintiff, filed a consolidated return for itself and all of its subsidiaries, including plaintiff, with the District Director of Internal Revenue at Chicago, Illinois. Also filed was a Form 851, which was an affiliations schedule listing Standard Coil as the parent corporation of the affiliated group, and plaintiff and another as its subsidiaries. In its letter transmitting the consolidated return to the Chicago Director, Standard Coil reported certain payments of tax previously made by it and its subsidiaries with respect to the 1953 tax liability, specifically listing the $18,000 payment made by plaintiff to the Wichita director. However, a Form 1122 consenting to the filing of a consolidated return by a parent corporation was not filed by plaintiff with the consolidated return mentioned above. Such a form, indicating plaintiff's consent to the filing of a consolidated return, was included with a consolidated return filed by Standard Coil for the year 1952.

Thereafter, in a letter dated July 14, 1954, plaintiff informed the Wichita director that it would not file a separate income tax return for 1953, and that its 1953 tax liability was reflected in a return filed by its parent, Standard Coil.

On August 21, 1954, all of the stock of plaintiff was sold by Standard Coil to Carl V. Rice and Ruth B. Rice.

On March 15, 1955, plaintiff sent to the Wichita director its federal income tax return for the year 1954. With this return was a letter from its president requesting that the $18,000 paid by plaintiff on March 15, 1954 be applied to its separate tax liability for 1954 as indicated in the return filed therewith. After assessment of plaintiff's full tax liability for the year 1954, the Wichita director gave plaintiff credit for the $18,000 as requested.

Subsequently, on July 19, 1960, the Wichita director deleted the credit made to plaintiff in 1955, and credited the amount of $18,000 to the tax liability of Standard Coil for the year 1953. This sum had previously been deducted from Standard Coil's tax liability by the Chicago director. The Wichita director then made demand upon plaintiff for payment of the $18,000 plus interest which was then due on its tax liability for 1954.

Considering all of the evidence adduced, it does not appear to the court that any of the transactions heretofore related were inspired by fraud or misrepresentation of a material fact. Rather it seems that the parties concerned, for one reason or another, were mistaken as to their rights under the circumstances in which these events transpired, if, indeed, any of the actions of the parties were erroneous. However, the court need not reach that question.

As noted, the Wichita director on March 15, 1955 credited plaintiff with $18,000 against its 1954 tax liability. This sum represented the amount held in the Wichita director's suspense account in favor of plaintiff since March 15, 1954. Whether this action was proper need not now be decided. If it was cor-rect, then the defendant could not prevail. If it was not, as defendant contends, then it was in the nature of an erroneous refund to the plaintiff by the Wichita director. In any event, the Wichita director sought to correct this action by deleting the credit made to plaintiff in 1955, and crediting that amount to the 1953 tax liability of Standard Coil. This was done on July 19, 1960, a date more than five years subsequent to the making of the erroneous refund to plaintiff.

The right of the defendant to recover refunds of any federal tax erroneously allowed is governed by the provisions of 26 U.S.C.A. § 7405. This section provides that periods of limitation upon actions brought under it are to be determined by 26 U.S.C.A. § 6532(b), which provides as follows:

"Recovery of an erroneous refund by suit under section 7405 shall be allowed only if such suit is begun within 2 years after the making of such refund, except that such suit may be brought at any time within 5 years from the making of the refund if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact."

The demand for return of the erroneous refund in this case was made more than five years after the making of the refund. Thus, even if the court had not found that there was no fraud or misrepresentation as mentioned in § 6532 (b), suit by the government to recover this refund would still be barred by the period of limitation set out.

◼ In this case, after demand made upon it by defendant, plaintiff paid the amount of $18,000 with interest, and after following the prescribed administrative procedures, brought this action to recover the amount paid. Hence, this suit is brought by the taxpayer, and not by the United States. This does not, however, prevent the plaintiff from setting up the limitation as a bar to the right of defendant to collect the tax.

"Congress was made aware [H.R. Rep.No. 2, 70th Cong., 1st Sess. 33–34 (1927), 1939–1 Cumm.Bull. (Part 2) 384, 406–407; I Report of the Staff of the Joint Committee on Internal Revenue Taxation 70–73 (Nov. 15, 1927)] that when dealing with periods prescribed in limitations, the problem had two facets, one as a defense, the other as a basis for recovery. Involved especially in the latter was the further question whether affirmative recovery required a showing that on the intrinsic merits the payment or refund should not have been made. The purpose of this interwoven legislation was to make plain that *if a taxpayer paid, or was compelled to pay, a tax then time-barred, * * * such untimely payments were to be recovered by taxpayer or Government on the basis of time without regard to the intrinsic merits or equities.*" United States v. C. E. Mathews, Inc., 263 F.2d 814, 817 (5th Cir. 1959). (Emphasis supplied.)

Taxpayer does not yield his right to assert the bar of limitation under the statute by paying the untimely demand, and bringing suit for refund. Here, whatever the merits of the controversy might be, the demand, made over five years after the making of the refund, comes too late. This being so, the plaintiff is entitled to recover the amounts paid by it upon the defendant's demand, with interest. Judgment must be for the plaintiff.

Counsel for plaintiff will prepare and submit an appropriate form of judgment.

## ON MOTION FOR RECONSIDERATION

### MEMORANDUM AND ORDER

In this action, brought to secure a refund of internal revenue taxes assessed against and paid by the plaintiff, trial was had to the court, and the case was decided, disposition of the issues presented being reflected in the memorandum of decision filed January 6, 1967. There-

after, the defendant, against which judgment was given, filed its motion for reconsideration and to vacate the judgment. It is that motion which is now before the court.

The facts as disclosed by the record reveal a comedy of errors, the script of which has been fashioned by argument into a complex production. Believing that it had satisfactorily grasped the import of the events from whence this cause arose, the court held that the collection of the amount alleged by defendant to have been owed as tax was barred by the period of limitation applicable to the recovery of erroneous refunds, that the plaintiff was entitled to assert the statutory bar as ground for recovery, and that it was entitled to judgment upon its claim. Defendant now seeks vacation of that judgment, asserting that the limitation upon which the court relied is not here applicable. Having examined the briefs and arguments of the parties with respect to this motion, it is the conclusion of the court that the decision already rendered was correct. The material facts upon which that decision depends appear in the memorandum previously filed. However, some benefit may be realized by a restatement and expansion upon those findings, in clarification of the result reached.

However intricate may be the facts relied upon in argument, this case, reduced to its essentials, turns upon the propriety of several applications of a certain sum of money which was originally paid by the plaintiff, on March 15, 1954, to the District Director of Internal Revenue, Wichita, Kansas. That sum was held by the Wichita director in a suspense account in favor of the plaintiff until, on March 15, 1955, it was credited by him as a payment upon plaintiff's income tax liability for the year 1954. It is this transaction which has fostered the present conflict. The plaintiff has taken the position that the application of the $18,000 to its 1954 tax liability was entirely proper, and that this disposition ought not be disturbed by the government. The defendant contends that the

amount in question should have been credited to the plaintiff's 1953 liability, as reflected in a consolidated return filed for that year by its then parent corporation, Standard Coil Products. This court, being of the opinion that the application made of the sum in question in March of 1955 was in the nature of an erroneous refund, did not reach the merits of the case, but held that recovery thereof by the government, through deletion of the credit made in 1955, on July 19, 1960, was barred by 26 U.S.C.A. § 6532(b), a statute of limitation.

■ The government has taken issue with the characterization of the action of the Wichita director in crediting the $18,000 against plaintiff's 1954 tax liability as an erroneous refund. Relying upon a statement of the Supreme Court in Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945), it suggests that this amount, having been retained in a "suspense account" in plaintiff's favor, was not a payment of tax, and hence could not have been a refund, erroneous or otherwise. Plaintiff also relies upon the rules developed in that case. It is appropriate, therefore, to examine what was said there, in determining its application to the case at hand. That case involved the payment of a sum of money into an expense account, and the disposition of the case turned upon the nature of the payment made. The government there contended that such transaction was indeed a payment, to which the Court made this reply:

" * * * But on [the date payment was made into the suspense account], the taxpayer did not discharge what he deemed a liability nor pay one that was asserted. There was merely an interim arrangement to cover whatever contingencies the future might define. * * * And this is the practical construction which the Government has placed upon such arrangements. The Government does not consider such advances of estimated taxes as tax payments. They are, as it were, payments in escrow. They are set aside, as we have noted, in special suspense accounts established for depositing money received when no assessment is then outstanding against the taxpayer. The receipt by the Government of moneys under such an arrangement carries no more significance than would the giving of a surety bond. Money in these accounts is held not as taxes duly collected are held but as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due. * * * Accordingly, where taxpayers have sued for interest on the 'overpayment' of moneys received under similar conditions, the Government has insisted that the arrangement was merely a 'deposit' and not a 'payment' interest on which is due from the Government if there is an excess beyond the amount of the tax eventually assessed. [Citing.] If it is not payment in order to relieve the Government from paying interest on a subsequently determined excess, it cannot be payment to bar suit by the taxpayer for its illegal retention. It will not do to treat the same transaction as payment and not as payment, whichever favors the Government." Id., at 662–663, 65 S.Ct. at 538.

Here is a case in which there is something for everybody; at least everybody involved in this lawsuit. Clearly, under this decision, the "deposit" made by plaintiff with the Wichita director was not a payment of tax, at least not when it was made. However, it does not, once made, remain forever after a "deposit," but only until the tax liability which it was made in anticipation of is "thereafter found to be due." The position taken by the government here is subject to the same criticism leveled against it in the *Rosenman* case. Deposits such as that made by this plaintiff are held in anticipation of an eventual assessment of taxes due. When that contingency becomes a fact, the deposit must then be a payment. To consider it otherwise would violate the purpose for which it was given and received.

■ In this case, after the plaintiff made the $18,000 deposit with the Wichi-

ta director, its then parent corporation, Standard Coil, filed a consolidated corporate income tax return with the District Director of Internal Revenue at Chicago, Illinois, on May 25, 1954, reflecting the consolidated income tax liability of the parent and its subsidiaries for the year 1953. Accompanying that return was a letter containing specific reference to the $18,000 deposit. Plaintiff, after the consolidated return was filed, informed the Wichita director by letter that its 1953 tax liability was contained in the consolidated return filed by Standard Coil. These facts do not aid in explaining the action of the Wichita director in crediting the $18,000 deposit, made in anticipation of plaintiff's 1953 tax liability, against its assessed liability for 1954. They do indicate, however, that at the time the credit was made, March 15, 1955, the sum in question had become a payment against 1953 taxes assessed upon the consolidated return, whether so designated or not. The defendant will not be heard to contend otherwise, since the success of its case on the merits would require that this be true; the entire case being built upon the proposition that the credit was improper in that it could properly be made only with respect to the consolidated tax liability for 1953. In fact, the action of the defendant in deleting the credit of March 15, 1955 and applying the amount of that credit to the liability of Standard Coil for the tax year 1953 recognizes the very thing which defendant now contends was not done. This court believes that, if the $18,000 was a payment of 1953 taxes, it had this character on a date prior to March 15, 1955. If it was not a payment on that date, then the action of the Wichita director was proper, and the reversal of that action in 1960 was not. The conclusion, inescapable in my view, is that the transaction of March 15, 1955, if it was erroneous, resulted in the granting to plaintiff of an erroneous refund of taxes paid, recovery of which is quite properly subject to the bar of limitation set out in the statute. 26 U.S.C.A. § 6532(b).

Defendant argues that the result reached by the court, even if the transaction of March, 1955 be an erroneous refund, is nevertheless improper, because it assumes that the amount thereof could not have been recovered except by a suit for erroneous refund. Of course, that is implicit in the decision rendered. Contrarily, the defendant urges that it could as well have proceeded upon a theory of assessment, upon which the period of limitation has not expired. That period has not expired. Nor could the government have proceeded upon that theory. There is no issue of assessment involved here. " * * * [T]he term 'assessment' * * * has a technical meaning spelled out in the Code and that meaning is binding on this court." United States v. Miller, 318 F.2d 637, 638–639 (7th Cir. 1963). It is binding on the government, too. The meaning of that term, as reflected in 26 U.S.C.A. § 6203, contemplates the recordation of the liability of a taxpayer by the Internal Revenue Service; that is, the determination of the amount due as tax upon that which is subject to taxation. That amount is not, and has not been, disputed by the parties to this suit. Rather, this dispute centers upon the disposition of a sum of money, whether a "deposit" or a "payment," which could not affect the assessed liability of plaintiff upon its income for the years in question. No assessment being here involved, the period of limitation upon assessment is immaterial to the issues presented.

Defendant argues that, even though an action for recovery of an erroneous refund would be time-barred, it is nevertheless entitled to recover upon a theory of collection or assessment with respect to the taxable years of 1953 or 1954. Under appropriate circumstances, this would be proper and correct. Such circumstances are not presented here. Were this a situation in which a later assessment could be made against plaintiff, an action thereon would not be barred. But, as against this plaintiff, what would be assessed? The tax liability of the plaintiff for the years in question is not.

disputed; it is correct. There is no collection to be made, in the technical sense, since collection was made by means of the 1955 credit. What the government attempts here is a deletion of credit, a credit which has been found to be an erroneous refund. A pure accounting transaction will not transform that deletion from an attempted recovery of an erroneous refund into an assessment or a collection. The facts shown to exist define the nature of the transaction; it cannot be made into other than what it is, by argument or by judicial action. To hold otherwise would be to permit the government to avoid, by a factual subterfuge, the effect of a direct expression of Congressional intent.

Although the defendant has presented vehement argument in support of its position, this court believes that the better reasoning lies with the plaintiff. The court is aware of the rule, espoused in many cases, that statutes of limitation such as are involved here must be strictly construed in favor of the government. The basis for this rule is evident, to secure collection of taxes justly owed. But strict construction does not require, and in fact forbids, that violence be done to the express meaning of the language of the Congress by judicial fiat. The court has here found, and such a finding was implicit in the decision previously filed, that this action is for the recovery of an erroneous refund. It is barred.

Even were the court to have held that the statute did not bar this proceeding, I believe that the doctrine of equitable estoppel would have been sufficient to produce the same result. The case here represents an attempt by the government to correct an error which it committed long before. Even after that error was discovered, the government advised the plaintiff that its tax liability for the years in question had been correctly disposed of. In the face of the government's position, the defendant was subjected to material detriment. However, because the court has found the attempted recovery to be barred by the statute, the defendant's motion fails on that ground.

It is, therefore, ordered that the motion of the defendant for reconsideration and to vacate judgment be denied.