**STATE STREET CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 67–112–F.C.A.**

United States District Court
D. Massachusetts.

Sept. 13, 1968.

David Burstein, J. Barry Morrissey, Hale & Dorr, Boston, Mass., for plaintiff.

Paul F. Markham, U. S. Atty., Joseph A. Lena, Asst. U. S. Atty., Peter J. Ciano, Trial Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## OPINION

FRANCIS J. W. FORD, District Judge.

Plaintiff in this action seeks to recover certain income tax payments allegedly illegally assessed and collected. Claim for refund has been properly made and denied. The relevant facts have been stipulated.

Plaintiff is one of a group of thirteen corporations whose income tax returns for the years 1945 through 1952, as well as the returns of the individuals who owned and controlled the corporations, were under investigation by the Internal Revenue Service beginning in 1953. In 1958 the District Director proposed deficiencies. At the request of the taxpayers various conferences were held before the Appellate Division.

On May 4, 1961 plaintiff signed a Form 870–AD offering to close the matter of its income tax liability on the basis of a tax deficiency of $28,602.67 for the year 1951 together with a penalty of $20,546.08. The conferee informed plaintiff that he would recommend acceptance of this offer but that his recommendation would not be binding on the Commissioner of Internal Revenue. The offer was not accepted by the Commissioner at that time and taxpayer was so informed on June 14, 1961. Plaintiff did not at any time thereafter contend that it owed the government less than this amount.

On January 31, 1962 plaintiff sent to the Internal Revenue Service a certified check for $66,095.83, representing the amount of the deficiency and penalty set forth in Form 870–AD with interest thereon to that date. Receipt of this check was acknowledged by the Service on March 30, 1962 in a letter which stated in part:

> The Internal Revenue Service assesses voluntary payments of this nature only in those cases where the amount of the deficiency has been determined. Inasmuch as the amount of the deficiency has not been determined in your case, no assessment will be made at this time.

> A voluntary payment which is not assessed is treated as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due. As such, it will have no effect on the computation of interest, nor on the running of the period of limitation for filing a claim. At such time as the amount of the deficiency is determined, an assessment will be

made, and your remittance will be applied as a payment of tax and/or interest made on the date of the assessment.

If you do not want your remittance to remain on deposit under the above conditions, you may request that the amount be returned to you. In this event, interest will continue to run on any unpaid tax as provided by law.

During 1962 the tax liabilities of some of these taxpayers were referred to the Department of Justice for possible criminal prosecution. Criminal prosecution was declined on October 29, 1962.

On March 26, 1964 the Form 870–AD executed by plaintiff was accepted by the Commissioner and on June 5 an assessment was made in the amount of $70,-127.43 consisting of items of tax liability of $28,602.67, penalties of $20,546.08, and interest of $20,978.68. The tax and penalty amounts are exactly the same as those agreed to by plaintiff in its Form 870–AD and used by it in computing the amount of its check in January, 1962. However, the June 5, 1964 assessment included interest to June 5, 1964, and this exceeded the amount of the January 31, 1962 check by the interest from January 31, 1962 to June 5, 1964. The 1962 check was credited to the deficiency and plaintiff paid the additional amount representing added interest. It is this amount which plaintiff now seeks to recover.

Plaintiff's position is that with the government's receipt of its check on January 31, 1962 its full tax liability as it was ultimately determined had been paid and that the government is entitled to no interest after that date. 26 U.S.C. § 6601 (a). The position of the defendant (which it has consistently held from the beginning, as its letter of March 30, 1962 indicates) is that receipt of plaintiff's check did not constitute a payment but was only the making of a deposit as security for the payment of a still undetermined tax liability. There was no payment which would stop the running of interest until an assessment of a deficiency in a definite amount had been made and the deposit applied in payment.

■■ A taxpayer is liable for interest on overdue tax payments until the date when the tax is paid. 26 U.S.C. § 6601(b). The statute does not give any further definition of what constitutes payment. Under 26 U.S.C. § 6213 (b) (3) and the corresponding Treasury Regulations § 301.6213–1(b) (3), any amount paid as a tax or in respect of a tax may be assessed upon receipt of the payment. Rev.Proc. 63–11, 1963–1 Cum. Bull. 497, issued to implement this regulation, provides in relevant part:

Sec. 4. GENERAL

\* \* \* \* \* \*

.02 An advance payment made before the mailing of a statutory notice of deficiency (90-day letter), which is made by a taxpayer as a payment in respect of a pending deficiency, may also be assessed upon receipt or as soon thereafter as is practicable, provided the District Director of Internal Revenue is in a position to ascertain the amount of the deficiency. \* \* \*

.03 Advance payments received before the mailing of a statutory notice of deficiency will not be assessed in any case where the District Director is unable to ascertain the amount of the deficiency at the time the payment is received. An advance payment which is not assessed will be treated as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due. As such, it will have no effect on the computation of interest or on the running of the period of limitation for filing a claim for refund. The taxpayer will be placed on notice by certified mail as to the status of the payment. At such time as the amount of the deficiency is determined, an assessment will be made and the advance payment will be applied as a payment of tax and/or interest made on the date of the assessment. Upon request by the taxpayer, the deposit will be returned to

him, without interest, at any time prior to assessment of the deficiency. * *

Sec. 5. INTEREST

.01 The running of interest on any amount of the deficiency which is satisfied by application of the advance payment will generally be terminated on the date the payment is received.

These provisions were superseded by Rev.Proc. 64–13, 1964–1 Cum.Bull. (Part 1) 674, which provides in part:

Sec. 4. INTEREST

.01 The running of interest on any amount of the deficiency which is satisfied by application of an advance payment (whether or not it is treated as a ·deposit as provided in section 3.03), will be treated as terminated on the date payment is received. * *

By its terms Rev.Proc. 64–13 applies only to payments made after February 24, 1964. Plaintiff does not rely on 64–13 as such, but argues that 64–13 does state what the law always was and corrects an erroneous interpretation set forth in 63–11.

Rev.Proc. 63–11 does not clearly support the government's position. Sec. 5.01 taken alone seems to state that any advance payment later applied to the satisfaction of a deficiency stops the running of interest against the taxpayer. Sec. 4.03 distinguishes between advance payments which are assessed and those not assessed and treated as deposits and says the latter do not affect computation of interest or the running of the period of limitation for filing a claim for refund. One way to resolve this ambiguity would be to take the provisions of Sec. 4.03 as referring to interest payable by the government on an overpayment. That such may have been the intent of Sec. 4.03 is indicated by the fact that the section links the computation of interest with the running of the limitation on refund claims, and thereby seems intended to incorporate into the regulations the rule of Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535.

This would leave the running of interest against the taxpayer to be governed by Sec. 5.01. This would bring 63–11 clearly into accord with what, as will be pointed out, the courts have assumed to be the rule as to the effect of advance payments on the running of interest. In this view, Rev.Proc. 64–13 did not change the rule in this respect but merely clarified the statement to remove the ambiguity found in Rev.Proc. 63–11.

The distinction between a payment of a tax and a deposit to cover possible tax liability has been of importance in several cases involving another aspect of the interest problem, where taxpayer claimed interest from the United States on the amounts of alleged overpayments of tax. These cases involved a consideration not present here, that of preventing the taxpayer from subjecting the government to payment of interest on money handed over to it by a taxpayer which had no substantial relation to his real or possible tax liabilities. Even here, assessment of the tax was not necessary in order for the transfer to constitute a payment. Northern Natural Gas Company v. United States, 354 F.2d 310, 173 Ct.Cl. 881; Charles Leich and Company v. United States, 329 F.2d 649, 165 Ct.Cl. 127.

No case has been cited involving an express decision on the precise issue presented in this case. However, there are many cases in which it was assumed as being clearly the law that a transfer such as that made by plaintiff here, whether called a payment or a deposit, was sufficient to stop the running of interest against the taxpayer. A leading case is Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535. There a check was sent by taxpayer to the Collector of Internal Revenue together with a letter stating, "This payment is made under protest and duress, and solely for the purpose of avoiding penalties and interest * * * *". On the precise question involved the court held that this did not constitute a payment of the tax so as to start the running of the three year

period of limitations of filing of a claim for refund. But it is significant that in that case the government conceded, and the court apparently agreed, that the payment was one which would have stopped the running of interest against the taxpayer.

In this circuit, United States v. Goldstein, 189 F.2d 752, involved the question of whether the filing of Form 870–TS (substantially the same as Form 870–AD filed by plaintiff here) without any payment was sufficient to stop the running of interest against the taxpayer. The court held it was not, but at page 755 the court, citing Rosenman, said: "If the taxpayer wished to avoid the running of interest he could do so by depositing with the Collector the amount of the proposed deficiency, which amount could be held in the Collector's suspense account pending final determination of the taxpayer's liability." Thus the court was telling the taxpayer in *Goldstein* that he could have stopped the running of interest by doing just what the plaintiff in this case did.

Similarly, in Fortugno v. Commissioner of Internal Revenue, 3 Cir., 353 F.2d 429, while the issue was whether the taxpayer was entitled to interest from the government on an alleged overpayment, the court in reviewing the law, said at page 434, citing *Rosenman*, "It is clear that the stopping of the running of interest and penalties can eventuate not only by the payment of the tax, but by a deposit of money in the nature of a surety bond for payment of the tax thereafter to be found due." In *Leich,* supra, 329 F.2d at page 652, the court characterized the issue before it as one of whether the taxpayer's remittance was a payment or "a mere deposit to stop the running of interest."

The conclusion must be that the plaintiff's remittance of January 31, 1962 was sufficient to terminate as of that date the running of interest against plaintiff on the deficiency to which it was eventually applied in payment, and that plaintiff is entitled to recover its additional payment representing interest on the amount of the deficiency subsequent to that date.

In accordance with their stipulation the parties will agree on the computation of the amount of judgment and submit a form of judgment to the court.