T.C. Memo. 1999-221


UNITED STATES TAX COURT


ESTATE OF STELLA ADLER WILSON, DECEASED,
ELEANOR SHELDON, EXECUTRIX, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 47120-86.


    D made a voluntary payment on Dec. 31, 1986, part of
which satisfied the entire income tax deficiency as
reflected in the deficiency notice for her taxable year
1980.  More than 5 years later, the IRS reallocated a
portion of the deficiency payment to other taxable years as
to which there were outstanding assessments.  The balance of
D's Dec. 31, 1986, payment equaled accrued interest on the
1980 income tax deficiency.  The IRS treated this amount on
its records as a "designated interest payment".  On Mar. 9,
1998, P, D's executor, made a voluntary payment in the
amount of $30,000 which was designated to the taxable year
1980 and the 2 succeeding years.  P contends that there is
an overpayment of Federal income tax for the taxable year
1980 in the amount of $30,000 due to unauthorized
reallocations of D's voluntary "designated" payment of tax
in 1986.

Held: R may not reallocate D's 1980 tax payment to satisfy outstanding assessments for years other than 1980.

Howard Philip Newman, for petitioner.

Jeffrey Johnson, for respondent.


MEMORANDUM OPINION

NIMS, Judge: Respondent determined deficiencies and additions to tax with respect to the Federal income tax of Stella Adler Wilson (decedent) for the taxable years 1980, 1981, and 1982. Decedent, the original petitioner, died in 1992, and by Order dated October 21, 1997, her estate was substituted as petitioner.

This case initially involved a number of partnership-related issues. However, these have all been resolved by stipulation.

When petitioner reviewed respondent's proposed computation of tax due, a question emerged over the application of a payment to a specific tax liability. By Order of the Court, petitioner was permitted to amend her pleadings to claim an overpayment for the taxable year 1980. There is no dispute that the claim was timely.

Petitioner contends that there is an overpayment of Federal income taxes for the taxable year 1980 in the amount of $30,000 due to the IRS's unauthorized reallocation of a voluntary "designated" payment of tax, from decedent's taxable year 1980

account to other taxable years in which there were outstanding and unpaid assessments. Respondent contends that there is an underpayment of income tax for the taxable year 1980 in the amount of $2,597 and that the reallocation of decedent's payment was proper.

The sole issues for decision are whether decedent's voluntary payment was a "designated" payment of her 1980 income tax, and whether respondent's subsequent reallocation was proper.

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar.

This case was submitted fully stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, decedent resided in New York, New York.

## Background

Decedent timely filed Federal income tax returns for the taxable years 1980, 1981, and 1982. Respondent timely mailed statutory notices of deficiency on October 14, 1986, determining income tax deficiencies and additions to tax for decedent's 1980, 1981, and 1982 taxable years, as follows:

| Year | Deficiency | Sec. 6659 | Additions to Tax Sec. 6653(a) | Sec. 6653(a)(1) | Sec. 6653(a)(2) |
|------|-----------|-----------|-------------------------------|-----------------|-----------------|
| 1980 | $89,410 | $26,768 | $4,470 | --- | --- |
| 1981 | 36,601 | 10,980 | --- | $1,830 | 50% of the interest due on $36,601 |
| 1982 | 4,602 | 1,381 | | 230 | 50% of the interest due on $4,602 |

Respondent also determined that, pursuant to section 6621, interest on substantial underpayments attributable to tax-motivated transactions for the taxable years 1980, 1981, and 1982 would be 120 percent of the adjusted rate.

The petition was filed on December 15, 1986.

On December 31, 1986, decedent made a single voluntary payment of $185,327. As of the same date, respondent credited $89,410 to decedent's account for the taxable year 1980 as a "Subsequent Payment". This amount equaled the 1980 income tax deficiency determined by respondent. Under respondent's procedures, a "Subsequent Payment" designation is used when a taxpayer does not make a designation with respect to whether a remittance constitutes a payment of tax or a deposit in the nature of a cash bond.

Respondent credited the remaining $95,917 to decedent's account for the taxable year 1980 as a "Designated Interest Payment".

On July 13, 1992, respondent transferred the following amounts out of decedent's account for the taxable year 1980 and

applied those amounts to satisfy liabilities for other taxable years in which unpaid assessments were pending, as follows:

| Year | Amount Transferred | Amount of Original Assessment | Date of Original Assessment |
|------|-----|-----|-----|
| 1978 | $1,800 | $7,408 | 05/14/79 |
| 1984 | 236 | 6,662 | 12/02/85 |
| 1989 | 30,561 | 23,130 | 02/03/92 |

The transfer in the amount of $30,561 from decedent's account for the taxable year 1980 resulted in an overpayment for the 1989 taxable year. Respondent issued a refund for the 1989 taxable year on April 19, 1993, in the amount of $12,376, of which $1,163 was interest. The refund appears to have resulted from abatement of interest and penalties made after the $30,561 reallocation from 1980 in 1992, plus certain other overpayment credits transferred.

On March 9, 1998, petitioner made a payment in the amount of $30,000. Petitioner designated this payment to be applied toward the deficiency for the taxable year 1980. If any excess amount remained, that amount was to be applied toward the deficiencies for the 1981 and 1982 taxable years. The record contains no explanation as to why petitioner made this payment, and in this particular amount. Respondent credited $30,000 to petitioner's account for the taxable year 1998.

Howard P. Newman (Newman), who represents petitioner in this case, has been an attorney since January 1979. He worked for

District Counsel, IRS, for 4-1/2 years and then left to enter private practice. He earned an LL.M. (tax) degree from New York University in 1983.

In 1986, Newman was a practitioner working solely on Federal income tax and related matters. In that year he wrote letters to all of his clients who had pending tax matters, including decedent, advising them that, due to changes in the law, if they wished to deduct interest on tax liabilities, either "determined" or contested, they had until December 31, 1986, to pay both the tax and the interest thereon in full. Decedent apparently was motivated by this letter to make her $185,327 payment on December 31, 1986, although in a recently filed status report Newman states that he never heard from decedent in response to his letter.

## Discussion

Petitioner argues that decedent made a voluntary payment of tax on December 31, 1986, in the amount of $89,410, the exact amount of the deficiency for 1980, which, petitioner claims, was "designated to the taxable year 1980". She urges that the $89,410 was part of a total remittance of $185,327, the balance of which, it is agreed, the IRS treated as a designated payment of interest. Petitioner further argues that (1) since decedent's voluntary payment was so designated, respondent was bound to honor her designation; (2) respondent's 1992 reallocations of

$1,800, $236, and $30,561 to the taxable years 1978, 1984, and 1989, respectively, were improper; and (3) petitioner is therefore entitled to add the reallocations back to the taxable year 1980. Thus, petitioner contends that, since she made a $30,000 voluntary tax payment on March 9, 1998, which was "designated to the taxable year 1980" and the 2 subsequent years, there was no deficiency for the 1980 taxable year, thereby resulting in a $30,000 overpayment.

Respondent argues that the IRS's reallocations were proper because decedent did not designate her voluntary payment in a manner that supersedes the IRS's discretionary authority to reallocate voluntary taxpayer remittances. According to respondent, the IRS has discretion to reallocate voluntary taxpayer remittances so long as the remittance is not designated a deposit in the nature of a cash bond (deposit). In the absence of evidence of such a designation, the IRS deems the remittance a payment of tax and may therefore reallocate the payment of tax to any taxable years in which assessments are outstanding. If respondent's reallocations are proper, then respondent asserts that petitioner has an underpayment of $2,597 for the taxable year 1980, determined as follows (additions to tax under sections 6653(a) and 6659 were conceded by respondent):

Tax year ending:  12-31-80

|  | Date | Amount |
| --- | --- | --- |
| REVISED LIABILITY | xxxxxxxx | $95,203.00 |
| Assessment - tax per return | xxxxxxxx | 5,793.00 |
| Additional assessment |  |  |
| Abatement |  |  |
| TOTAL ASSESSMENT | xxxxxxxx | 5,793.00 |
| INCREASE/(DECREASE) In ASSESSMENT | xxxxxxxx | 89,410.00 |
| Revised liability | xxxxxxxx | 95,203.00 |
| Payments |  |  |
| Credit applied from 1979 year | 04-15-80 | 3,609.10 |
| Estimated tax payment | 09-22-80 | 922.00 |
| Estimated tax payment | 01-21-81 | 2,000.00 |
| Subsequent payment | 12-31-86 | 89,410.00 |
| Subsequent payment | 03-09-98 | 30,000.00 |
| Less refunds or credits: |  |  |
| Overpayment credit elect | 04-15-81 | (738.00) |
| Transferred to 1981 |  |  |
| Credit transferred to 1989 | [1]12-31-86 | (30,561.18) |
| Credit transferred to 1984 | [1]12-31-86 | (236.14) |
| Credit transferred to 1978 | [1]12-31-86 | (1,800.01) |
| TOTAL PAYMENTS | xxxxxxxx | 92,605.77 |
| BALANCE DUE/(OVERPAYMENT) | xxxxxxxx | 2,597.23 |

[1]These credits were actually transferred on July 13, 1992.

Thus, petitioner's entitlement to an overpayment for the taxable year 1980 hinges upon whether the IRS had the authority to reallocate petitioner's voluntary tax payment of $89,410, which petitioner claims was designated for the taxable year 1980.

Respondent finds himself on the horns of a dilemma in this case. On the one hand, he is constrained by <u>Rosenman v. United States</u>, 323 U.S. 658 (1945), where the Supreme Court held that a claim for refund for a remittance made as a "deposit" rather than as a "payment" was not time barred by the predecessor to section 6511. See <u>Ertman v. United States</u>, 165 F.3d 204, 206 (2d Cir. 1999). Thus, if decedent's 1986 remittance was a deposit, petitioner would, in general, be entitled to recover it without interest, at any time before the IRS is entitled to assess the tax. See Rev. Proc. 84-58, sec. 4.01, 1984-2 C.B. 501, 502.

On brief, respondent expends substantial effort to establish that decedent's 1986 remittance was not a deposit. (For simplicity, when referring to decedent's "remittance" we refer to the $89,410 segment of her $185,327 remittance, except where noted.) But respondent need not have made this effort, because petitioner readily agrees that decedent's remittance was not a deposit.

The alternative with which respondent must therefore deal is how to categorize the remittance, and respondent appears to agree that the remittance constitutes a payment of tax. As a matter of fact, in his reply brief respondent cites <u>Ertman v. United States</u>, <u>supra</u>, for the proposition that where a payment is explicitly defined by the Code as a payment of tax, that payment is a payment of tax rather than a deposit. (As respondent notes

in his reply brief, Ertman was decided by the U.S. Court of Appeals for the Second Circuit, the court to which this case would normally be appealed, after opening briefs were filed in this case.)  In Ertman, the Court of Appeals held that remittances submitted with Forms 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, constituted payments, not deposits, and therefore the taxpayers' entitlement to refunds was limited by section 6511.  See id.

Respondent goes on to point out that his own revenue procedure, Rev. Proc. 84-58, supra section 4.03, 1984-2 C.B. at 502-503, explicitly says that any payment which is "specifically designated as a deposit in the nature of a cash bond will be treated as a payment of tax if it is made in response to a proposed liability * * * and remittance in full of the proposed liability is made."  (Emphasis added.)  Respondent nevertheless argues that because decedent's remittance was "undesignated", the IRS was authorized to reallocate it.

Where a taxpayer makes an involuntary payment, the IRS may allocate or reallocate the payment as it sees fit, regardless of taxpayer designation, if any.  As we stated in Amos v. Commissioner, 47 T.C. 65, 69 (1966):  "An involuntary payment of Federal taxes means a payment received by agents of the United States as a result of distraint or levy or from a legal

proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor."  Respondent does not argue that decedent made an involuntary payment in this case.

In the same vein, if a taxpayer makes a voluntary payment without directing application of funds, the IRS may make whatever allocation it chooses.  See Estate of Baumgardner v. Commissioner, 85 T.C. 445, 459 (1985).  However, where a taxpayer makes voluntary payments to the IRS, he does have a right to direct the application of payments to whatever type of liability he chooses.  See Muntwyler v. United States, 703 F.2d 1030, 1032 (7th Cir. 1983); Estate of Baumgardner v. Commissioner, supra at 459-460.

Having postulated the foregoing principles, we must now decide whether decedent did, in fact, designate the December 31, 1986, remittance as a payment of her 1980 income tax--i.e., the type of liability decedent chose--and if so, whether respondent was free on July 13, 1992, to reallocate some of the 1986 payment, i.e., $32,597 thereof, to assessments for other years, one of which--1989--was 3 years in the future at the time decedent made her 1986 payment.

We are satisfied that decedent designated her entire voluntary payment as a payment of income tax and interest for 1980.  A transcript of decedent's IRS account for 1980 reflects, under date of 12/31/86, as a "Subsequent Payment" the amount of

$89,410--the exact amount of the 1980 income tax deficiency determined in the deficiency notice.  Also, under the same date, the same transcript reflects as a "Designated Interest Payment" the amount of $95,916.67.  Decedent's total payment, which appears to have been motivated by Newman's letter to his tax clients, was in conformity with the provisions of Rev. Proc. 84-58, supra, which deals extensively with procedures for taxpayers to make remittances to stop the running of interest on deficiencies.  Rev. Proc. 84-58, supra section 5.03, 1984-2 C.B. at 503, states that "A taxpayer wishing to stop the running of all interest must make a payment or deposit sufficient to cover all accrued interest as of the date of remittance as well as the entire amount of the underlying tax."  This decedent did.

The record is silent as to why the IRS treated the tax payment as a "subsequent payment" while at the same time treating the interest payment as a "designated" interest payment. Whatever may have been intended by the subsequent payment label in the IRS records, this is merely an entry characterized by the IRS, and the records to this extent are not dispositive of the issue.  See Estate of Baumgardner v. Commissioner, supra at 459.

Nevertheless, we are satisfied that decedent effectively designated her total remittance as a payment of 1980 tax and the interest thereon, notwithstanding the fact that neither party has located any communication from decedent to the IRS making that

designation.  It has to follow, moreover, that since the IRS found the $95,916.67 to be a designated interest payment, the $89,410 must have likewise been a designated tax payment.  To argue otherwise, as respondent does, is to fly in the face of his own revenue procedure.

Section 6213(b)(4) provides an exception to the general rule of section 6213(a), that no assessment may be made, among other things, while a case is pending in the Tax Court.  Under section 6213(b)(4), any amount paid as a tax or in respect of a tax may be assessed upon the receipt of such payment notwithstanding the provisions of section 6213(a).

Rev. Proc. 84-58, supra section 4.01, 1984-2 C.B. at 502, provides that "a remittance made after the mailing of a notice of deficiency in complete or partial satisfaction of the deficiency will, absent any instructions from the taxpayer, be considered a payment of tax and will be posted to the taxpayer's account as such as soon as possible."  While not expressly stated, the manifest implication of this language is that a specific tax as to type and year, i.e., the tax determined in the deficiency notice, is what is paid, and not any tax that the IRS may choose. We believe a remittance in full payment of the tax in response to a deficiency notice fulfills this IRS administrative requirement, and that decedent's 1986 remittance should have been treated as a payment of tax for 1980.  For the foregoing reasons, we hold that

decedent's 1986 remittance was a voluntary payment designated as a payment in full of her 1980 tax, reflected in the deficiency notice. Consequently, respondent was without authority to reallocate the 1980 tax payment--over 5 years later--to assessments for different years.

Since part of decedent's 1986 payment was reallocated from 1980 to 3 other years as to which there were outstanding assessments as of July 13, 1992, when the reallocation was made, ($12,376, was refunded to petitioner on April 19, 1993), respondent argues that petitioner is seeking an unwarranted windfall to which she is not entitled. Petitioner correctly points out, however, that the issue before the Court is whether decedent's payment was designated to a specific year--1980. Since we have found that decedent so designated her payment, the consequences of the IRS's reallocation of the payment to other years not before the Court are irrelevant, and in any event not within our limited jurisdiction. See sec. 7442; Belloff v. Commissioner, 996 F.2d 607, 611 (2d Cir. 1993), affg. T.C. Memo. 1991-350.

Respondent has not, in his pleadings or on brief, raised an issue as to the applicability of section 6402(a), which provides that the Secretary, within the applicable period of limitations, may credit an overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue

tax on the part of the person who made the overpayment. That issue is not, therefore, before the Court, and we express no opinion with respect thereto.

Petitioner designated the $30,000 payment which she made on March 9, 1998, to be applied toward the deficiency for 1980, with any excess amount to be applied toward the deficiency for the taxable year 1981, and if any excess amount remained, to be applied toward the deficiency for 1982. To the extent there is an overpayment, the overpayment will be determined pursuant to section 6512 by a decision under Rule 155.

To properly account for the $30,000 payment, the settled issues, and what we have held in this case, a recomputation will be necessary, and

<u>Decision will be entered</u>

<u>under Rule 155</u>.